Mahmood KHOSHAYAND, Appellant

v.

The STATE of Texas, Appellee.

No. 05–04–01403–CR.

Court of Appeals of Texas,
Dallas.

Dec. 15, 2005.

[1st Dist.] 2003, no pet.); *Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 272 (Tex.

App.-Houston [1st Dist.] 2001, no pet.).

Noemi A. Collie, Law Office of Noemi A. Collie, Dallas, for Appellant.

Tammy Ardolf, Asst. Dist. Atty., Dallas, for State.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION

Opinion By Justice MAZZANT.

Appellant Mahmood Khoshayand was convicted of aggravated sexual assault of a child under the age of fourteen. *See* TEX. PEN.CODE ANN. §§ 22.021(a)(1)(A)(iii), 22.021(a)(2)(B) (Vernon 2003). After the jury found appellant guilty, it assessed punishment at ten years' imprisonment. On appeal, appellant asserts: (1) the State violated his Fourteenth Amendment due process rights by suppressing exculpatory and impeachment evidence; and (2) the trial court improperly excluded handwritten notes prepared by a State investigator. For the following reasons, we affirm the judgment of the trial court.

### Factual and Procedural Background

Appellant was convicted of sexually assaulting his daughter, R.K., by placing his mouth on her female sexual organ when she was approximately seven or eight years old. R.K. was fifteen years old at the time of trial. She testified that appellant first had sexual contact with her when she was approximately five years old. She was in the bathroom of her home when appellant entered and put his hand down her underwear, touching her vagina. When R.K. was approximately six years old, appellant made her place her hand on his penis. On another occasion, R.K. was in her bedroom, wearing her nightgown, underwear, and shorts. She testified that appellant came in her room, took off her shorts and underwear, and placed his mouth on her vagina. Soon after, when R.K. was eight or nine years old, her parents divorced. R.K. did not tell her mother about the sexual abuse until she was a teenager. At that time, R.K.'s mother and stepfather took her to the police where she disclosed the sexual abuse.

On September 9, 2003, the prosecutor assigned to the case, Reynie Tinajero, and an investigator, Crystal Phillips, interviewed R.K. During that interview, Phillips took notes and made a written notation, "doesn't remember [appellant's] mouth on her privates." The notation was disclosed to defense counsel by Tinajero in pretrial discovery. On November 1, 2003, another prosecutor, Justin Lord, took over the case. On the morning trial began, July 12, 2004, before voir dire, the defense attorney questioned Lord about the statement. Lord said he was not aware of the statement, but indicated he would speak to Tinajero about it. At defense counsel's insistence, Tinajero reviewed the case file. He located the notes taken by Phillips, and showed them to defense counsel.

The trial court allowed the jury to hear evidence of the victim's alleged statement to Tinajero and Phillips through defense counsel's cross-examination of R.K.:

Defense Counsel: Do you remember telling them that you did not remember your father's mouth coming into contact with your private parts?

R.K.: That was the point where I was saying miscommunication. I remember I had believed that they had

asked if he had penetrated, and I believe I said, "No." But I think there was a miscommunication between those two points.

Defense Counsel: Okay. So—But do you recall telling them during that interview that you did not recall your father's mouth touching your private parts?

R.K.: I recall telling them that I did not remember his tongue going in, penetrating.

Defense Counsel: You were questioned about that last night . . . or this morning? Were you questioned about that issue about what you had said or not said to Mr. Reynie Tinajero?

R.K.: It was discussed, yes.

. . .

Defense Counsel: When you were questioned about that, you denied saying that you didn't remember your father's mouth touching your genitals.

R.K.: I recall saying that I remember denying penetration, I thought that there was a miscommunication.

Outside of the presence of the jury, defense counsel questioned Phillips, the investigator, about her notes:

Defense Counsel: Okay. Specifically, you also questioned [R.K.] about the specific charges in this case; correct? Which is contact between the Defendant's mouth and the victim's private area, vagina.

Phillips: I don't remember what was said in that interview.

Defense Counsel: Did you take any—

Phillips: I took some notes, and in looking at these notes, I don't know what the question was, why I wrote that. I normally don't question the child; [the prosecutor] would and I would take some notes. So I don't know what the question was and why I wrote that.

The prosecutor's questioning of Phillips regarding the notation was as follows:

Prosecutor: And even after looking at it, you can't tell the Court that you know that it was accurate at the time you wrote it, can you?

Phillips: I don't know what the question was to why I wrote that. I don't know if he was talking about a—one incident and she said that or—I really just don't have no [sic] recollection at all about the interview. And I met the kid today—or, yesterday, and I don't even remember her face. So, I don't know.

Prosecutor: And you can't assure the court that that's even accurate because you don't remember it, right?

Phillips: No, I don't remember.

Defense counsel asked the court to "introduce the document as an exhibit, just in case this turns into a bill of exceptions." The trial judge ruled, "Since [Phillips] doesn't know what it is and it is not relevant to this case, I'm going to not let you call her or put it on the record, and I'll take it as a bill of exception and enter it for the record."

### Brady Issue

In the first issue, appellant contends the investigator's notes were exculpatory and impeachment evidence and they were suppressed in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We disagree. Pursuant to Brady, the State has an affirmative duty under the Due Process Clause of the Fourteenth Amendment to disclose evidence that is favorable to the defendant and is material to a defendant's guilt or punishment. Thomas v. State, 841 S.W.2d 399, 407 (Tex.Crim.App.1992). To establish a Brady violation, a defen-

dant must show: (1) the State failed to disclose evidence; (2) the withheld evidence was favorable to the defendant; and (3) the evidence is material, meaning there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex.Crim.App.2002); *Little v. State*, 991 S.W.2d 864, 866 (Tex.Crim.App. 1999).

■ In this case, appellant concedes the statement was disclosed to defense counsel by Tinajero prior to trial. Tinajero turned over the case to Lord in November 2003. The case went to trial in June 2004. By all accounts, the evidence was disclosed to the defense months prior to trial. Appellant had the opportunity to put the evidence to use at trial, and he used it in the cross-examination of R.K. If the defense has the opportunity to cross-examine concerning the allegedly exculpatory material, and there is no showing the defense would have pursued a different trial strategy if this information was known earlier, then no *Brady* violation is shown. *Williams v. State*, 995 S.W.2d 754, 761–62 (Tex.App.-San Antonio 1999, no pet.); *see also Olivarez v. State*, 171 S.W.3d 283, 290 (Tex. App.-Houston [14th Dist.] 2005, no pet.) (citing *United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir.1985)).

Further, it is unclear from the record that the evidence was favorable to the accused. Appellant asserts the statement is a recantation by R.K. However, at trial, R.K. testified about several episodes of sexual abuse. Neither the investigator's notes nor the investigator's testimony outside the presence of the jury clarify which episode of sexual abuse was being referenced by the notation. R.K. testified that she was responding to a question about whether appellant's tongue had penetrated her vagina. She labeled it a "miscommuni-

cation." R.K. never recanted her statement regarding the appellant's mouth-to-genital contact.

Finally, as part of his *Brady* argument, appellant asserts that, even though the potentially exculpatory evidence was disclosed, the prosecutors actively and intentionally conspired to prevent its admission into evidence through the investigator's failure to recall the interview. Appellant accuses the prosecutors of misconduct and the investigator of lying under oath. There is no evidence in the record to support these allegations. We decide appellant's first issue against him.

### Exclusion of the Investigator's Notes From Evidence

■ In his second issue, appellant contends it was error for the trial court to deny the admission of the investigator's notes into evidence. The record reflects appellant received a ruling from the trial court pursuant to Texas Rule of Evidence 104(a) that Phillips was not competent to testify as a witness and the notes were not relevant. Appellant now contends the notes qualified for admission: (1) as an admission of a party opponent under Texas Rule of Evidence 801(e)(2)(a); (2) as a present sense impression exception to the hearsay rule under Texas Rule of Evidence 803; and (3) as a recorded recollection exception to the hearsay rule pursuant to Texas Rule of Evidence 803(5).

■ We need not address appellant's list of arguments for admissibility because they were not raised at trial and were not preserved for appeal. *See* TEX.R.APP. P. 33.1(a)(1)(A); *Resendiz v. State*, 112 S.W.3d 541, 547 (Tex.Crim.App.2003). It would violate "ordinary notions of procedural default" for a court of appeals to reverse a trial court's ruling on a legal theory not presented to the trial court by the complaining party. *Hailey v. State*, 87

S.W.3d 118, 122 (Tex.Crim.App.2002). This is based on the theory that the trial court should have an opportunity to rule upon the issue, and the non-appealing party should have the opportunity to develop a complete factual record. *Id.*

In considering a trial court's ruling on the admissibility of evidence, we must determine whether the trial court abused its discretion. *Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App.2002). We review the trial court's ruling in light of what was before it at the time the ruling was made and uphold the ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.; see also Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex.Crim. App.2005); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000).

The record reflects that Phillips had no recollection of the interview or of what question had been asked by Tinajero and answered by R.K., when she wrote "doesn't remember [appellant's] mouth on her privates." The trial court, in making the relevancy ruling, had to determine whether a reasonable person would believe that the particular piece of evidence was helpful in determining the truth or falsity of any fact that was of consequence to the lawsuit. *See* Tex.R. Evid. 401; *Montgomery v. State*, 810 S.W.2d 372, 375–76 (Tex. Crim.App.1990). In this case R.K. testified to three episodes of abuse, one episode involved appellant's mouth-to-genital contact, and two episodes did not. The investigator did not recall the interview, or what question had been asked, or what answer she was recording when making the notation. The notes were not helpful in determining the truth or falsity of any fact relevant to the lawsuit. Accordingly, they were not relevant and were not admissible.

Additionally, the investigator's notes were inadmissible because they memorialized out-of-court observations of a third party's interview with R.K. and were hearsay within hearsay. Tex.R. Evid. 805. Therefore, for the notes to have been admissible both (1) the written notes of the investigator and (2) the out-of-court statement of the victim would have had to conform to an exception to the hearsay rule. *See Ricketts v. State*, 89 S.W.3d 312, 319 n. 1 (Tex.App.-Fort Worth 2002, pet. ref'd). When a trial judge is presented with a proffer of evidence containing both admissible and inadmissible statements and the proponent of the evidence fails to segregate and specifically offer the admissible statements, the trial judge may properly exclude all of the statements. *Jones v. State*, 843 S.W.2d 487, 492–493 (Tex. Crim.App.1992); *see also Garcia v. State*, 126 S.W.3d 921, 926 (Tex.Crim.App.2004); *Willover*, 70 S.W.3d at 847.

Finally, in this case, the jury heard the purported statement of R.K. through defense counsel's cross-examination of R.K. Any error in excluding evidence is harmless if the same evidence is subsequently admitted without objection. *See Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex.Crim.App.1999); *McFarland v. State*, 845 S.W.2d 824, 840 (Tex.Crim.App. 1992).

The trial court did not abuse its discretion in denying the admission of the investigator's notes into evidence. We decide appellant's second issue against him.

The judgment of the trial court is affirmed.