# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

═════════════════
## ON REMAND
═════════════════

## NO. 03-05-00156-CR

**Thomas James Clemens, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. 3040165, HONORABLE JON N. WISSER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Thomas Clemens was convicted of attempted arson of David Leibson's home. In three issues on appeal, Clemens argues that the evidence is legally and factually insufficient to support his conviction and that the district court erred in admitting the testimony of Sandra Budge, a criminalist for the State Fire Marshal, stating that various items found on Leibson's property contained gasoline. In our original opinion, we concluded that the evidence was legally insufficient to support Clemens's conviction. The State appealed, and the court of criminal appeals reversed our determination and concluded that the evidence was legally sufficient. *Clemens v. State*, No. PD-0489-07, 2008 Tex. Crim. App. LEXIS 167, at *11-12 (March 5, 2008) (not designated for publication). Accordingly, the court of criminal appeals remanded the case back to this Court so that

we could consider the remainder of Clemens's issues on appeal. *Id.* at *12. On remand, we conclude that the district court erred in admitting Budge's testimony. Accordingly, we will reverse and remand the judgment of the district court.

**BACKGROUND**

Clemens and Leibson were roommates and resided at Leibson's house in Austin, Texas. After Clemens moved out of the house, he sued Leibson, claiming that Leibson had failed to return property to him. The court ordered Leibson to return various items to Clemens's attorney.

Some time after Clemens filed suit, Leibson's bedroom window was shattered at approximately midnight one evening in January 2004 while Leibson was in the room. Although the window shattered, the screen remained intact. After putting on his pants, Leibson ran outside to investigate and saw Clemens rushing to his car. Although Leibson admitted that it was dark, he testified that he recognized Clemens. Further, Leibson stated that Clemens yelled an expletive at him upon seeing him outside and that he recognized Clemens's voice. Leibson observed Clemens drive off and, subsequently, called the police to report the incident. Officer Rivera, the responding officer, testified that, after investigating, he could not determine what object caused the window to break. However, he did testify that Leibson identified Clemens as the party responsible for breaking the window.

Leibson's neighbor, Donna Doyle, testified that around nine o'clock the next morning, while she was cleaning her living room, she saw Clemens walk down Leibson's porch steps, cut through Leibson's yard, and walk by Leibson's car. Doyle testified that, although she had never talked to him, she had seen Clemens at Leibson's house before and recognized him. Doyle

2

stated that the next time she looked up from cleaning, approximately a minute later, she saw a fire underneath Leibson's car.

After seeing the fire, Doyle ran out of her house and over to Leibson's car. She testified that the fire had been set using beer bottles and a paper sack. In addition, she testified that she noticed that there was liquid inside the bottles, but she did not smell anything. She further testified that the fire intensified when she inadvertently knocked one of the bottles over while attempting to move the bottles away from the car's gas tank using her broom. After unsuccessfully attempting to extinguish the fire, Doyle then knocked on Leibson's front door and told him about the fire. Leibson was able to extinguish the fire and, subsequently, called the police. Leibson testified that, during his attempt to extinguish the fire, he noticed that the beer bottles had rags placed into their necks and noticed that the area smelled like gasoline.

Officer Arturo Gonzalez responded to Leibson's call. He testified that, when he arrived at the scene, he could see that there had been a small fire underneath Leibson's car. He also observed several beer bottles filled with fluid that had rags stuffed into their necks. Officer Gonzalez testified he could smell gasoline in the area around the car.

While inspecting the remainder of the house, Leibson found another bottle on the ground near the window that had been broken the night before. Leibson testified that the bottle must have been the object that shattered his bedroom window. He further opined that the screen must have prevented the bottle from entering his house. Leibson informed Officer Gonzalez about the bottle, and Officer Gonzalez noticed that, like the bottles found underneath Leibson's car, this bottle also contained liquid and had a rag stuffed into its neck. He further noticed that the rag was burned

3

on both ends. Although he did not pick up the bottle to sniff it and admitted that he did not know for certain what was in the bottle, Officer Gonzalez testified that he could faintly smell gasoline near the bottle but that the smell was not as strong as it was near Leibson's car. Leibson also testified that he found yet another bottle on the other side of his house and testified that he could also smell gasoline near that bottle as well.

Clemens was charged with attempted arson of a habitation. *See* Tex. Penal Code Ann. § 15.01(a) (West 2003), § 28.02 (West Supp. 2007). The indictment specified that

> on or about the 17th day of January A.D. 2004, . . . [Clemens] did then and there, with the specific intent to commit the offense of arson of . . . a habitation, do an act, to-wit: threw an incendiary device through the window of said habitation which device, a bottle of flammable liquid and a fuse was in the manner of its use or intended use was capable of causing death or serious bodily injury, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

Appellant waived his right to a jury trial, and a bench trial was held.

During trial, Sandra Budge, a criminalist for the State Fire Marshal's arson laboratory, also testified. She stated that part of her job was to analyze evidence she received from law enforcement officials to test for the presence of ignitable liquid residue. She stated that, in conducting an analysis for this case, she tested three liquid samples collected from beer bottles and concluded that each sample contained gasoline.[1]

---

[1] Clemens objected to Budge's testimony, contending that no chain of custody had been shown, and the district court conditionally allowed her testimony. In his third issue on appeal, Clemens contends that the district court erred in admitting Budge's testimony.

4

The district court found Clemens guilty of attempted arson, a second degree felony, and assessed punishment at ten years' imprisonment, but the sentence was suspended to four years of community supervision. Clemens appeals the judgment of the district court.

**DISCUSSION**

In his first remaining issue, Clemens argues that there is a material variance between the evidence offered at trial and the crime alleged in the indictment and that, for this reason, the evidence is legally insufficient to support his conviction. In his second issue, Clemens contends that the evidence is factually insufficient to support his conviction. In his third issue, Clemens argues that the district court erred in admitting Budge's testimony regarding tests she performed on the three liquid samples she received because no proof of chain of custody was offered. We will address Clemens's variance argument first and then address his chain of custody issue. Because of our ultimate disposition of this appeal, we need not address Clemens's factual sufficiency issue.

**There is no Material Variance**

On appeal, Clemens argues that there was a material variance between the allegations in the charge and the proof given at trial. Specifically, Clemens contends that the evidence proves attempted arson of a vehicle, not of a habitation. *See Smith v. State*, 135 S.W.3d 259, 262-63 (Tex. App.—Texarkana 2004, no pet.) (explaining that evidence that appellant threatened to engage in one act is insufficient to support conviction for attempt of another act). Because the indictment does not specify attempted arson of a vehicle, Clemens asserts that there is a material variance, and therefore, the evidence is insufficient to support his conviction for attempted arson of Leibson's

5

home.  *See  Macias v. State*, 136 S.W.3d 702, 706-07  (Tex. App.—Texarkana 2004, no pet.) (holding that because there was material variance between crime alleged and proof introduced at trial, evidence was legally insufficient to uphold conviction).  Further, Clemens argues that, at most, the evidence presented at trial demonstrates that a bottle was thrown "at" a window and not "through" a window as specified in the indictment and that this discrepancy constitutes a material variance.  Finally, Clemens contends that the indictment is defective because it did not contain the word attempt.

A variance exists when the evidence establishes facts different from those alleged in the charging instrument. *Wright v. State*, 855 S.W.2d 110, 112 (Tex. App.—Houston [14th Dist.] 1993, no pet.).  Only a material variance will render the evidence insufficient to support a conviction, and a variance is material if it deprives the defendant of the ability to prepare an adequate defense by not sufficiently notifying the defendant of the charges against him or subjects the defendant to the risk of being prosecuted for the same offense later.  *Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002); *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001).

As previously discussed, the court of criminal appeals concluded that the evidence was legally sufficient to prove attempted arson of a habitation—the offense specified in the indictment. *See Clemens*, 2008 Tex. Crim. App. LEXIS 167, at *11-12.  The fact that the word "through" rather than the word "at" was used in the indictment does not amount to a material variance because it did not deprive Clemens of notice of the charge or subject him to the risk of later being prosecuted for the same offense. *Cf. Fuller*, 73 S.W.3d at 253 (concluding that discrepancy between victim's name as alleged in indictment and proof of victim's name at trial was not material

6

variance and noting that there was no evidence defendant was unaware of who he was accused of hurting or that he was surprised by proof offered at trial). Further, although the indictment does not specifically include the word "attempt," the language of the indictment tracks the language in the penal code defining the crime of attempt. *See* Tex. Penal Code Ann. § 15.01(a). Accordingly, we overrule this issue on appeal.

**Chain of Custody**

In his third issue, Clemens argues that the district court erred in admitting Budge's testimony regarding the tests she performed on the three liquid samples. Specifically, Clemens asserts that the State did not properly present evidence of chain of custody because it never produced evidence showing that someone collected bottles from the scene, collected samples of the liquid present in those bottles, and placed the samples in containers prior to Budge receiving the evidence. Clemens also argues that, other than Budge's improperly admitted testimony, there was no evidence indicating that the bottle found in the vicinity of Leibson's window contained gasoline. Without this evidence, Clemens contends there was no proof that he threw an item capable of destroying Leibson's house by fire or explosion. Therefore, Clemens argues that the admission of Budge's testimony was harmful.

During trial, Clemens repeatedly objected to the portion of Budge's testimony regarding the tests she performed, arguing that the State did not properly demonstrate chain of custody.[2] The following occurred during Budge's testimony:

---

[2] In its brief, the State concedes that through his various objections, Clemens preserved this issue for appellate review. *See* Tex. R. App. P. 33.1.

7

Q: Can you tell the Court what items you examined, what items of evidence you looked at in this case?

A: If I may refer to my report?

Q: Please.

A: There were four items of evidence.

[DEFENSE ATTORNEY]: Your Honor, I'm going to object as there is no chain of custody shown.

[PROSECUTION]: There has been no evidence offered—offered yet. I mean, I don't think I have—

[DEFENSE ATTORNEY]: She is offering evidence based on—she is offering testimony based upon evidence to which we have no chain of custody. So we don't know what she is—there is no evidence here that what she examined has anything to do with this case.

[PROSECUTION]: Well, actually, there is. But Judge, what I was hoping to do—and we will go with the Court's sound discretion on this issue, but since Ms. Budge and these other witnesses have come down here and waited all morning.

[THE COURT]: Well, conditionally, let's put on her testimony. And then if the defense wants to have the other witnesses who gathered the evidence and transported, we can get him here the next time.

[THE PROSECUTION]: Thank you, Your Honor.

Q: You say you examined four items?

A: Yes, sir.

Q: And what were those items?

A: One item was liquid from a beer bottle, another item was liquid from a beer bottle. A third was liquid from a beer bottle. A fourth was a section of broken glass pane.

Q: Let's talk about the beer bottles and the liquid found in the beer bottles. Did you examine that liquid?

8

A: Yes, sir, I did.

Q: And what—did you make a determination of what that liquid is?

[DEFENSE ATTORNEY]: Your Honor, can I have a running objection to this, just to be sure I have protected my record.

[THE COURT]: Sure.

A: Would you repeat the question, please sir?

Q: What—were you able to determine what the liquid in those beer bottles was?

A: Yes, sir.

Q: And what was it?

A: All three items contained gasoline.

Q: Is gasoline a flammable liquid?

A: Yes, it is.

Q: Have you had any training in incendiary devices or do you strictly do a chemical analysis?

A: I do strictly chemical analyses.

Q: And when you received this evidence, how was it packaged?

A: It came in a sealed plastic bag. And inside the plastic bag for three of the items—excuse me, two of the items were small glass jars that contained liquid.

Q: Uh-huh.

A: A third item was a one-quart metal can that contained liquid.

Q: So for instance, on your report, you indicated say Item 2, that's a beer bottle found outside the victim's bedroom window. You didn't get that beer bottle?

A: That's correct.

9

Q: You got liquid that came from that beer bottle?

A: That's correct.

Q: When you received this evidence, was that in substantially the same condition as evidence as usually received by you in these cases from the Austin Fire Department?

A: It was consistent with evidence that I received, yes.

Q: Didn't appear to—then the seals—were the seals intact?

A: Yes.

Q: Didn't appear to be tampered with?

A: That's correct.

No other witnesses were called after Budge testified.

The standard of review for a trial court's admissibility decision is an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). In applying this standard, we review the district court's ruling in light of the record before the court at the time the ruling was made, *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.), and will not disturb the ruling absent a showing in the record that the trial court abused its discretion, *Rankin v. State*, 821 S.W.2d 230, 233 (Tex. App.—Houston [14th Dist.] 1991, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). We will uphold the trial court's ruling if the court employed the appropriate analysis, *cf. id.*, if the ruling is reasonably supported by the record and is correct under any theory of law applicable to the case, *Khoshayand*, 179 S.W.3d at 784, and if the ruling is within the "zone of reasonable disagreement," *Powell*, 63 S.W.3d at 438.

Rule of evidence 901 requires that evidence be authenticated or identified prior to the evidence's admission and provides, in relevant part, as follows:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Tex. R. Evid. 901(a).

If the party seeking admission of evidence is not able to identify the "physical evidence through distinctive markings or the like, or if the evidence is fungible, as are drugs or test results," proof of chain of custody is required. *Davis v. State*, 992 S.W.2d 8, 10-11 (Tex. Crim. App. 1996); *see also Avila v. State*, 18 S.W.3d 736, 739 (Tex. App.—San Antonio 2000, no pet.). To admit evidence from scientific tests, "a proper chain of custody must be established." *Avila*, 18 S.W.3d at 739. Chain of custody is established if testimony is entered establishing that an officer seized the evidence, tagged it, placed an identifying mark on it, placed the evidence in storage, and retrieved it for trial. *Id.* Proof of the beginning and end of the chain of custody will generally support admission unless there is evidence showing that the evidence was altered or tampered with. *Hall v. State*, 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000), *pet. dism'd, improvidently granted*, 46 S.W.3d 264 (Tex. Crim. App. 2001). For evidence sent to a laboratory for analysis, chain of custody may be established by testimony indicating that the laboratory handled the evidence in a manner similar to the way police properly handle evidence when chain of custody must be demonstrated. *Avila*, 18 S.W.3d at 739. If the State demonstrates the chain of custody from the time the evidence is initially collected to the time the evidence is sent to the laboratory, most questions

11

regarding care and custody, "including gaps and minor theoretical breaches, go to the weight of the evidence, not its admissibility." *Id.*

After reviewing the entire record, we conclude that the district court erred in admitting Budge's testimony. The liquid found in the bottles at Leibson's house was fungible and not capable of being identified through distinctive markings. Further, samples of the fungible liquid were allegedly obtained from Leibson's house and sent off for analysis. Consequently, proof of chain of custody was required in order for Budge's testimony regarding tests she performed on the samples she received to be properly admitted. *See Davis*, 992 S.W.2d at 10-11; *Avila*, 18 S.W.3d at 739.

However, no evidence or testimony was introduced connecting the samples Budge analyzed to the scene of the crime at issue in this case. In fact, Budge specifically testified that she did not receive the containers from which the samples she tested were originally collected and stated that she simply received samples of liquid. Although she claimed that the samples were taken from bottles and a metal canister[3] found on a crime scene, she did not specify in what manner and from what individual the origins of the samples were communicated to her. Moreover, although Budge did mention Leibson and Leibson's property in her testimony, she in no way communicated that she was analyzing samples as part of an investigation of the crime that Clemens allegedly committed. Although she stated a case number, she only linked the case number to Leibson, not Clemens.

---

[3] No other witness testified regarding the presence of a metal canister in any manner. In other words, no witness testified that a metal cannister was found on Leibson's property, that it was found as part of an investigation relevant to this case, or that it was used during the commission of the offense charged.

12

Furthermore, no evidence was offered showing that samples were actually collected from Leibson's house, identifying who collected the samples, or indicating that those samples were actually sent to the arson laboratory for analysis. *Cf. Rodriguez v. State*, 2 S.W.3d 744, 746-48 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (regarding collection of urine for urinalysis and transfer of urine to laboratory, "prosecutor needed to elicit some testimony . . . that showed what occurred, specifically, with appellant's urine samples and not just what occurs generally"). Only two law enforcement officers testified during the trial, and neither of them mentioned observing or participating in the collection of evidence from the property. In particular, Rivera testified that he was called to Leibson's property to investigate the cause of a broken window but also testified that he was unable to ascertain the cause of the window shattering and made no mention of observing any bottles or any other type of evidence on the property. In addition, although Gonzalez testified that he observed bottles on Leibson's property, he also testified that he never touched or handled any of the bottles and made no mention of seeing any other law enforcement personnel moving the bottles or collecting any evidence.

In light of the preceding, we cannot ignore the lack of a foundation regarding Budge's testimony, nor are we permitted to assume that the samples Budge tested were properly collected from bottles found on Leibson's property as part of an investigation for the crime alleged in this case. Accordingly, we conclude that the district court's decision to admit Budge's testimony that the liquid samples were taken from items found on Leibson's property and that the samples were gasoline without evidence establishing proof of the chain of custody was beyond the zone of reasonable disagreement and was, therefore, an abuse of discretion.

13

We must now determine whether the error was harmful. Rule 44.2(b) provides that appellate courts must disregard non-constitutional errors if the error does not affect a criminal defendant's "substantial rights." Tex. R. App. P. 44.2(b). In other words, an appellate court may not reverse if, after examining the entire record, the court has a fair assurance that the error did not have a substantial and injurious effect or influence in the conviction determination. *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004).

In making its case against Clemens for attempted arson of a habitation, the State was required to prove that Clemens committed an act "amounting to more than mere preparation" with the intent to set Leibson's house on fire or cause Leibson's house to explode. *See* Tex. Penal Code Ann. §§ 15.01(a), 28.02. The act alleged in the indictment specified that Clemens "threw an incendiary device," specifically "a bottle of flammable liquid," "through the window" of Clemens's house. Because the act was an essential element of the crime, the State had the burden of proving the act beyond a reasonable doubt. *See Short v. State*, 874 S.W.2d 666, 667 (Tex. Crim. App. 1994).

After reviewing the entire record, we do not have a fair assurance that the error in question did not have a substantial and injurious effect or influence in the conviction determination. Without Budge's testimony, there is insufficient evidence to prove, beyond a reasonable doubt, that the bottle found in the vicinity of Leibson's window contained a flammable liquid.

Although Leibson's neighbor testified that the fire underneath the car intensified after the bottle was knocked over and its contents spilled, there is no evidence that the bottle found near the window was filled with the same liquid. Moreover, the neighbor also specifically stated that when she went to extinguish the fire underneath Leibson's car, she did not smell anything.

14

The only evidence indicating the possibility of a flammable liquid being present in the bottle found beneath the bedroom window is the testimony of Officer Gonzalez and Leibson that there was a faint smell of gasoline in the area around the bottle.[4]  However, the fact that the area around the bottle smelled like gasoline cannot serve as proof beyond a reasonable doubt that the bottle was filled with a flammable liquid, particularly when, as in this case, the smell could have originated from a number of other sources, including the much stronger smell of gasoline present near the car.[5]  Although Gonzalez did call the bottles found on the property "molotov cocktails" and thereby imply that the bottles were filled with flammable liquid, he also directly contradicted that statement when he admitted that he had no idea what was in the bottles found on Leibson's property. Specifically, in response to a question about whether he had knowledge of the contents of the bottles, he stated, "I can speculate, but, no. . . .  I didn't touch them.  I didn't pick them up—I didn't pick them up and sniff them."

Without Budge's testimony, even when viewed in the light most favorable to the verdict, we conclude that the State failed to prove beyond a reasonable doubt that Clemens threw a bottle *containing a flammable liquid* as it was required to do by the terms of the indictment. Therefore, we conclude that the erroneous admission of Budge's testimony was harmful and sustain Clemens's third issue on appeal.  This harmful error in the admission of evidence requires remand of the case for further proceedings.  *Cf. Miles v. State*, 918 S.W.2d 511, 517 (Tex. Crim. App. 1996)

---

[4]  Although there was testimony that the bottle found beneath the window had a rag stuffed into its neck that had been burned on the ends, that testimony cannot support a conclusion that the liquid observed in the bottle, rather than the rag itself, was flammable.

[5]  At trial, Leibson admitted that even a few drops of gasoline may create a detectable odor.

(explaining that because only evidence on particular issue came from erroneously admitted testimony, court could not conclude that erroneous admission of evidence did not have impermissible effect on punishment determination).

## CONCLUSION

Having overruled Clemens's variance issue and sustained Clemens's third issue on appeal, we need not address Clemens's second issue that the evidence is factually insufficient to support his conviction. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Waldrop

Reversed and Remanded on Remand

Filed: May 15, 2008