Affirmed and Memorandum Opinion filed December 4, 2008








Affirmed and Memorandum Opinion filed December 4, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-01048-CR

____________

 

BRUCE LEE SCOTT, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 8

Harris County, Texas

Trial Court Cause No. 1486366

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Bruce Lee Scott, Jr., appeals from his
conviction for misdemeanor assault on a person with whom he had a dating
relationship.  A jury found appellant guilty, and the trial court assessed
punishment at one year probation and a $500 fine.  In thirteen issues,
appellant attacks the trial court=s rulings on several
evidentiary matters.  Appellant also complains that the complaining witness,
Felicia Hobbs, was allowed to remain in the courtroom over objection during
appellant=s testimony.  We affirm.








I.  Background

Felicia Hobbs testified that by April 2005, she had been
dating appellant off and on for six years.  On Saturday, April 9, 2005,
appellant was living at Hobbs= apartment.  That afternoon, appellant
borrowed a vehicle that Hobbs= mother had bought for Hobbs= use.  Around 10 o=clock that night,
Hobbs contacted appellant to ask when he was going to bring the vehicle back. 
According to Hobbs, appellant responded that he would bring it back once he Aran all the gas
out of it.@  The couple argued, and Hobbs asked appellant to
spend the night at his mother=s house instead of at Hobbs= apartment. 
Nonetheless, around 2 a.m., after Hobbs had gone to bed, appellant entered the
apartment, and the two again began to argue.  At some point, appellant got into
bed with Hobbs, and she tried unsuccessfully to push him out, telling him he
should go to the living room because she did not want him in her bed.

Hobbs then decided to leave the apartment herself and got
out of the bed.  When Hobbs was standing on one side of the bed and appellant
on the other, appellant leaned across the bed and slapped Hobbs across her
face.  Hobbs said that the slap was Avery hard@ and that it hurt
and made her stumble back.  She ran to the living room to call 9-1-1 on a land
line, but appellant pulled the telephone cord out of the wall.  Hobbs then
grabbed her cell phone, but appellant took it from her.  Finally, Hobbs grabbed
her car keys, exited the apartment, and ran to her car barefoot and in her
night clothes.

Upon leaving the apartment complex in her vehicle, Hobbs
spotted and Aflagged-down@ a deputy constable. 
She told the deputy what had happened and led him back to the apartment complex
where she discovered appellant had left in her other vehicle.  Hobbs spent the
remainder of the night at a friend=s residence.  The
next day, Hobbs discovered appellant was back at her apartment, so she had the
deputy constable assist in removing appellant from the premises.  Hobbs said
that after that night she no longer had a romantic relationship with appellant,
but she still saw him occasionally on a social basis.








On cross-examination, defense counsel attempted to ask
Hobbs about prescription drug use.  The prosecutor objected to the relevance of
this line of questioning, and the trial court explained that defense counsel
could elicit testimony regarding the time of the incident at issue but not
otherwise.  Defense counsel also attempted to ask Hobbs about her alleged Aanger problem@ and marijuana use
and about allegations that she routinely contacted appellant to ask if he had Asome weed,@ apparently
referencing marijuana.  The trial court, however, sustained objections to the
relevance of each of these questions and again admonished counsel Ato focus on the
incident.@

Given the opportunity to make a bill of exception, defense
counsel stated that he wanted to elicit information regarding Hobbs= prescription drug
use because it was relevant to her state of mind at the time of the offense. 
He further indicated that he wished to ask Hobbs about her continued
relationship with appellant after the incident.  Specifically, he wanted to ask
her if she sent appellant a text message on August 4, 2007, which read: AGot weed.  I=m at The
Sportsman.@  The court reiterated that counsel could ask Hobbs
questions regarding her state of mind at the time of the offense and at the
time of trial but not otherwise.

During renewed cross-examination, Hobbs denied that she had
drunk alcohol or smoked marijuana on the day of the incident with appellant. 
Hobbs also described an argument that she and appellant had earlier in the day
regarding picking up his nephew.  Hobbs then reiterated that appellant started
the confrontation later that evening.  She said that she did not recall
throwing a candle holder at appellant and hitting him in the back of the head.








When defense counsel asked Hobbs whether appellant told her
on the day of the incident that she had an anger problem, the trial court
sustained the prosecutor=s relevance objection.  After a recess for
lunch, counsel attempted to ask Hobbs what she was able to recall after the
recess that she could not recall before the recess.  The prosecutor objected
that the question assumed facts not in evidence, and the court sustained the
objection, advising defense counsel to Aask a straight
question . . . who, what, when, where, how . . . [g]ive her the subject
matter.  You know, give her something to respond to.@  Hobbs then
testified that she recalled having thrown a candle at appellant at the time of
the incident and that he slapped her four additional times after she did so. 
She said that she recalled these facts after thinking about the questions asked
before the recess and after having talked with the prosecutor during the
recess.  She also stated that she had trouble remembering throwing the candle
because the questions regarding the incident were out of chronological order. 
On re-direct, Hobbs testified that she did not recall whether she had taken an
anti-depressant on the day of the incident.  She said that when she did take
the medication, it made her feel more relaxed, not agitated.

Deputy Constable Jason Reese testified that a little after
3 a.m. on April 10, 2005, he was driving down a street when he saw a vehicle=s headlights
flashing.  He stopped and exited his vehicle, and Hobbs got out of the other
vehicle wearing pajamas.  She seemed upset, even frantic, was bleeding from her
mouth, and told Reese that she had just been assaulted.  He accompanied Hobbs
back to her apartment, but the assailant was no longer there.  She was bleeding
from her lip and appeared to have been hit on the side of her head as well. 
According to Reese, he did not discern any signs that Hobbs was intoxicated or Ahigh@ on marijuana.

On cross-examination, defense counsel asked Reese whether
in his investigative experience, he had ever taken information from one party
to a dispute only to later find out that the information was not accurate.  The
prosecutor objected to the relevance of the question, and the trial court
sustained the objection.  Also during cross-examination, Reese acknowledged
writing in his incident report that Hobbs said appellant slapped her while they
were both in bed, as opposed to standing on either side of it as she testified
in court.

At the conclusion of Reese=s testimony, the
prosecutor requested permission for Hobbs to be present in the courtroom for
the remainder of the testimony.  Defense counsel objected, but the trial court
overruled the objection and permitted Hobbs to remain.








Appellant testified that he and Hobbs had an on-again,
off-again relationship over several years and on two occasions lived together. 
He stated that Hobbs took the prescription medications Paxil and Zoloft and
drank alcohol.  He also detailed an argument the two had, which began on April
9 when Hobbs refused to attend a family function with appellant and then
started calling him to return with the vehicle he borrowed to go to the
function.  Appellant acknowledged that at some point he told her he was going
to drive all the gas out of the vehicle before returning it.  Appellant
testified that when he did return to the apartment around 3 a.m., he got into
bed, and Hobbs reinitiated the argument.  She tried to push him out of the bed
then started kicking him.  They both got out of the bed, and when appellant
started walking toward the kitchen, Hobbs tried to scratch his face.  Appellant
grabbed the land-line phone and threatened to call 9-1-1, but Hobbs
disconnected the cord from the wall outlet.  Then, as appellant walked toward
his cellular telephone, Hobbs hit him on the head with a candle, dropping him
to his knees.  Appellant got back to his feet, went into the bedroom, and got
Hobb=s cell phone. 
Hobbs then ran at appellant, trying to get her phone away from him.  The two
fell onto Athe back of the bed,@ and Hobbs hit her
chin and bit her lip.

Regarding Hobbs= contention that
appellant reached across the bed to slap her, appellant testified that it was a
queen-sized mattress, and it would have been impossible to simply lean across
it to slap someone on the other side.  Appellant denied hitting or otherwise
assaulting Hobbs during the incident.  On cross-examination, appellant denied
offering Hobbs money to drop the charges against him.

After the defense rested, the prosecutor announced that he
wanted to call Hobbs back to the stand as a rebuttal witness.  Defense counsel
then renewed his argument that Hobbs should not have been allowed to remain in
the courtroom during appellant=s testimony.  The trial court, however,
permitted Hobbs= additional testimony.








Hobbs testified in rebuttal that she tried to push
appellant out of the bed but did not kick him.  She further stated that
appellant leaned over the bed to slap her and that is when her lip got hurt. 
Lastly, she insisted that appellant had indeed offered her money to drop the
charges.  On cross-examination, defense counsel attempted to ask Hobbs about
how her testimony had changed during the trial, saying, among other similar
things:  Ayou understand that there has been at least three
occasions now that your testimony has either changed or more has been added to
it?@  The prosecutor
objected that the method of questioning was argumentative and that the
questions had already been asked and answered.  The trial court sustained the
objections.  The jury found appellant guilty, and the trial court assessed
punishment at one year probation and a $500 fine.

II.  Issues on Appeal

Appellant raises thirteen issues on appeal.  Appellant
contends that the trial court erred in sustaining objections to defense counsel=s questioning
Hobbs about her use of the prescription drug Paxil (issues 1, 2, and 3), about
her alleged Aanger problem@ (issue 4), about
her marijuana use (issue 5), about her asking appellant for marijuana (issues 6
and 7), about her prescription drug use and the nature of her relationship with
appellant (issue 8), and about what caused her sudden change in testimony
(issue 9).  Appellant additionally contends that the trial court erred in
sustaining the prosecutor=s objection when defense counsel attempted
to ask Deputy Reese about his investigative experience (issue 10).  Appellant
further contends that the trial court erred in permitting Hobbs to remain in
the courtroom during appellant=s testimony (issue 11), permitting Hobbs
to testify on rebuttal after having remained in the courtroom for appellant=s testimony (issue
12), and again sustaining the prosecutor=s objection when
defense counsel inquired about a change in Hobbs= testimony (issue
13).

III.  Evidentiary Rulings During State=s Case in Chief

A.  Standards of Review








We review a trial court=s evidentiary
rulings for abuse of discretion.  Martin v. State, 173 S.W.3d 463, 467
(Tex. Crim. App. 2005).  A trial court abuses its discretion when its decision
is outside the zone of reasonable disagreement or if it acts without reference
to guiding rules or principles.  Montgomery v. State, 810 S.W.2d 372,
380, 391 (Tex. Crim. App. 1990).  If the ruling under review is correct under
any theory of law applicable to the case, we must uphold the judgment.  Martin,
173 S.W.3d at 467.   In order to preserve error regarding the exclusion of
evidence, the offering party must make an Aoffer of proof@ conveying the
substance of the proffered evidence unless it was apparent from the context of
the questions asked.  Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.2; Roberts
v. State, 220 S.W.3d 521, 532 (Tex. Crim. App. 2007); Fairow v. State,
943 S.W.2d 895, 897 n.2 (Tex. Crim. App. 1997).  An offer of proof can either
be made in question‑and‑answer form or in the form of a concise
statement by counsel.  Tex. R. Evid. 103(b); Love v. State, 861 S.W.2d
899, 901 (Tex. Crim. App. 1993).  When the concise statement method is
utilized, the statement must include a reasonably specific summary of the
proposed testimony.  Love, 861 S.W.2d at 901.

B.  Rulings During Hobbs= Testimony

In his first three issues, appellant contends that the
trial court erred in sustaining the prosecutor=s relevance
objections when defense counsel asked Hobbs (1) whether she was taking the
prescription drug Paxil Afor [her] mood swings,@ (2) whether Paxil
could be used to treat Aobsessive/compulsive disorder,@ and (3) whether
the side effects of Paxil included Aagitation and
anxiety.@  Texas Rule of
Evidence 401 defines Arelevant evidence@ as Aevidence having
any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.@  Tex.
R. Evid. 401.  Relevant evidence is generally admissible, while
irrelevant evidence is inadmissible.  Id. 402.  Appellant argues that the
sought-after testimony was relevant to Hobbs= state of mind at
the time of the offense and offered relevant background evidence regarding the
incident for which appellant was charged.








The flaw in appellant=s argument is that
none of the questions, to which the court sustained a relevancy objection, were
limited in scope to the period of time surrounding the incident for which
appellant was charged.  Furthermore, the latter two questionsCwhether Paxil
could be used to treat Aobsessive/compulsive disorder@ and whether its
side effects included Aagitation and anxiety@Cwere asked in a
general fashion, not about Hobbs= own experience on
the medication.  The Texas Court of Criminal Appeals has indicated that
evidence of things such as drug use that might mentally impair a witness is
relevant and admissible only if the thing at issue is shown to have caused
impairment at the time the witness observed the crime.  See Lagrone v. State,
942 S.W.2d 602, 612-13 (Tex. Crim. App. 1997); see also Turner v. State,
762 S.W.2d 705, 707-08 (Tex. App.CHouston [14th
Dist.] 1988, pet. ref=d).  Because counsel did not limit his
questions specifically to Hobbs= experience during the period surrounding
the incident in question, the trial court did not err in sustaining the relevancy
objections.  We overrule appellant=s first three
issues.

In his fourth issue, appellant contends that the trial
court erred in sustaining the prosecutor=s objection that
the question was vague when defense counsel inquired whether Hobbs= had an Aanger problem.@  Again, appellant
contends that the question went to Hobbs= state of mind at
the time of the incident and offered relevant background evidence.  However, as
asked, defense counsel=s question presented neither a time frame
for the response nor a definition of what was meant by Aanger problem.@  Defense counsel
also did not subsequently attempt to clarify the question.  Under the
circumstances, we conclude that the trial court did not abuse its discretion in
sustaining the vagueness objection.  We overrule appellant=s fourth issue.








In his fifth issue, appellant contends that the trial court
erred in sustaining the prosecutor=s relevancy
objection when defense counsel inquired whether Hobbs had used marijuana during
the time of the incident.  Again, appellant contends that the question went to
Hobbs= state of mind at
the time of the incident and offered relevant background evidence.  The
question at issue asked:  A[D]uring the time of this particular
incident, on or around this particular period of time, have you ever smoked
marijuana?@  As can be seen, the question actually posits three
periods of time: (1) Aduring . . . this particular incident,@ (2) Aon or around this
particular period of time,@ and (3) Aever.@  Under the Lagrone
case, discussed above, marijuana use during the incident itself might be
relevant if shown to have impaired Hobbs= ability to
observe and recall the events themselves, but marijuana use at other times
would not be relevant.  942 S.W.2d at 612-13.  Regardless, Hobbs subsequently
testified that she did not smoke marijuana on the date of the incident for
which appellant was charged.  Any error in excluding evidence is rendered
harmless if the sought-after evidence is later admitted.  Khoshayand v.
State, 179 S.W.3d 779, 784 (Tex. App.CDallas 2005, no
pet.).  Accordingly, we overrule appellant=s fifth issue.

In his sixth issue, appellant contends that the trial court
erred in sustaining a relevancy objection when defense counsel inquired whether
Hobbs had asked appellant for marijuana during the time of the incident. 
Appellant contends that the question went to Hobbs= state of mind at
the time of the incident and offered relevant background evidence.  The
question at issue asked:  ADuring the time of this particular
incident, or thereabouts or any time thereafter, have you ever asked
[appellant] for marijuana?@  This question posits four periods of
time:  (1) A[d]uring the time of this particular incident,@ (2) Athereabouts,@ (3) Aany time
thereafter,@ and (4) Aever.@  Because of the
extended time frame presented, this question was improper under Lagrone. 
942 S.W.2d at 612-13.  Furthermore, the question asks about a request for
drugs, not actual drug use.  Appellant offers no explanation as to how this
would be relevant to Hobbs= state of mind at the time of the
offense.  Accordingly, we overrule appellant=s sixth issue.








In his seventh issue, appellant contends that the court
erred in sustaining a relevancy objection when counsel inquired whether Hobbs
had asked appellant Afor some weed@ during the time
of the incident.  Appellant contends that the question went to Hobbs= state of mind at
the time of the incident and offered relevant background evidence.  At the
record citation provided by appellant, however, defense counsel asked Hobbs
about her relationship with appellant after the incident for which
appellant was charged.  Therefore, when counsel asked Hobbs, A[a]nd as part of
that friendship, you routinely text Mr. Scott and ask him, Do you have some
weed [sic]?@ the time frame inquired about was clearly
post-incident.  This conclusion is supported by the fact that during his offer
of proof, counsel mentioned only one such text message, coming over two years
after the incident.  Under Lagrone, the question is clearly not relevant
to Hobbs= state of mind at
the time of the incident.  942 S.W.2d at 612-13.  Accordingly, we overrule
issue seven.

In his eighth issue, appellant contends that the trial
court erred in not allowing counsel to elicit testimony from Hobbs regarding
her prescription drug use and state of mind as well as the nature of her
relationship with appellant.  Appellant argues that such evidence was relevant
to Hobbs= state of mind at
the time of the offense and as background evidence.  The record citation
offered by appellant is to the offer of proof defense counsel made in response
to the sustaining of the objections made the basis for issues one through seven
discussed above.  Neither the record citation nor the appellate arguments under
issue eight offer any material or analysis not already discussed.  Accordingly,
for the reasons stated in the preceding issues, we overrule issue eight.








In his ninth issue, appellant contends that the court erred
in sustaining an objection when counsel asked Hobbs what caused her to Asuddenly change
her testimony and recall facts after a break.@[1]  There are two
problems with appellant=s complaint.  First, defense counsel asked
Hobbs what happened during the break that caused her to recall information
before Hobbs testified regarding the additional information.  The prosecutor
objected that the question assumed facts (i.e., Hobbs= recalling of
additional facts) that were not in evidence.  Given that Hobbs had not provided
any new testimony before defense counsel asked how she recalled the
information, the objection and the sustaining of the objection were both
proper.[2] 
Second, subsequent to the sustaining of this objection, Hobbs testified that
she recalled the additional facts after thinking about the questions asked
before the recess and after having talked with the prosecutor during the
recess.  Thus, defense counsel ultimately managed to elicit the information he
was seeking and has no basis for complaint.  See Khoshayand, 179 S.W.3d
at 784 (holding any error in excluding evidence is rendered harmless if the
evidence is subsequently admitted).  Accordingly, we overrule issue nine.

C.  Ruling During Reese=s Testimony

In his tenth issue, appellant contends that the court erred
in sustaining a relevancy objection when counsel asked Deputy Reese regarding
his experience in investigating assault cases.  Specifically, counsel asked
Reese whether in any other cases, he had taken information from one party to a
dispute and later discovered that the information was not true.  Appellant,
however, offers no explanation as to how the fact a party in a wholly unrelated
case may have fabricated information tended to make the existence of any fact
that is of consequence to the present action more or less probable.  See
Tex. R. Evid. 401 (defining Arelevant evidence@), 402 (providing
that irrelevant evidence is not admissible).  The evidence sought was simply
not probative of any issue in the case, including whether Hobbs had fabricated
information.  See Miller v. State, 36 S.W.3d 503, 507 (Tex. Crim. App.
2001); 1 Steven Goode et al., Guide to the Texas Rules of Evidence ' 401.1 (3d ed.
2002).  Accordingly, we overrule appellant=s tenth issue.

IV.  AThe Rule@

In his
eleventh issue, appellant contends that the trial court violated Texas Rule of
Evidence 614 (known colloquially as Athe Rule@) by permitting Hobbs to remain in
the courtroom after her case-in-chief testimony and during appellant=s testimony.  In his twelfth issue,
appellant contends that the trial court also violated Rule 614 by permitting
Hobbs to testify on rebuttal after having heard appellant=s testimony.  Appellant argues that
he was irreparably harmed because Hobbs= presence in the courtroom during
appellant=s testimony had a material effect on her rebuttal testimony.








Rule 614
is designed to prevent witnesses from altering their testimony, consciously or
not, based on other witnesses= testimony.  Webb v. State, 766 S.W.2d 236, 239 (Tex.
Crim. App. 1989).  It reads in relevant part as follows:

Rule 614.  Exclusion of Witnesses

At the request of a party the court shall order
witnesses excluded so that they cannot hear the testimony of other witnesses,
and it may make the order of its own motion.  This rule does not authorize
exclusion of:

. . . .

(4) the victim in
a criminal case, unless the victim is to testify and the court determines that
the victim=s testimony would be materially affected if the victim
hears other testimony at the trial.

Tex.
R. Evid. 614; see also Tex. Code Crim. Proc. art. 36.03 (containing
substantially similar provisions to those in Rule 614(4)).[3] 
In short, Rule 614 permits a victim in a criminal case to remain for the
testimony of other witnesses unless the judge determines that the victim=s testimony would
be materially affected by hearing the other testimony.  The trial court has
discretion to decide if a witness fits under this exception to exclusion under
Rule 614.  Peters v. State, 997 S.W.2d 377, 384 (Tex. App.CBeaumont 1999, no
pet.).  The rule does not, however, provide any specific criteria to guide the
court=s discretion.  1
Goode et al. ' 614.2.








Apart from making the general statement that hearing
appellant testify would affect Hobbs= rebuttal testimony,
appellant does not identify any specific factors suggesting Hobbs= testimony would
have been, or indeed was, so affected.  Generally, in circumstances such as are
present here, where the victim has already testified in the case-in-chief, the
danger that her testimony would be materially affected by hearing other
testimony is much reduced.  See id.  To begin with, in most such cases,
the majority of the victim=s testimony would already be completed and
thus could not be materially affected by the victim=s hearing other
testimony.  Additionally, the trial judge would have already heard the victim=s testimony, so he
would have substantially more information on which to determine whether
additional or rebuttal testimony might be materially affected.  Furthermore,
the jury would have already heard the victim=s case-in-chief
testimony, thus making it much more difficult for the victim to adjust any
rebuttal testimony in response to other testimony.  If the victim changed his
or her testimony after having heard others testify, it could have serious
credibility consequences.

Here, after appellant testified, the prosecutor called
Hobbs to the stand in rebuttal.  She then testified that on the night in
question, she tried to push appellant out of the bed but did not kick him.  She
stated that appellant leaned over the bed to slap her, cutting her lip.  She
also denied that she was the one who disconnected the land line telephone.  All
of this testimony was in keeping with Hobb=s case-in-chief
testimony and thus was not materially affected by having heard appellant
testify.  Lastly, in her rebuttal testimony, Hobbs asserted that appellant
offered her money to drop the charges against him.  Although there was no
antecedent for this testimony in Hobbs= case-in-chief
testimony, it is likely that Hobbs was the catalyst for the prosecutor=s embarking on
this line of questioning.  Therefore, there is no indication that Hobbs= testimony was
materially affected by having heard appellant testify.

Because of the circumstances under which Hobbs testified
and the absence of any factors suggesting that Hobbs= testimony was
materially affected by remaining in the courtroom during appellant=s testimony, we
find that the trial court did not abuse its discretion by permitting Hobbs to
remain in the courtroom and then testify in rebuttal.  We overrule appellant=s eleventh and
twelfth issues.

V.  Evidentiary Ruling During State=s Rebuttal








In his
thirteenth issue, appellant contends that the trial court erred in sustaining
the prosecutor=s objections when defense counsel attempted to ask Hobbs about alleged
changes in her testimony between the case-in-chief and the rebuttal.  Appellant
argues that the sought-after evidence was relevant, material, and probative of
Hobbs= credibility.  The objections made
and sustained, however, were that the line of questioning had already been
asked and answered and that the nature of the questions was argumentative.[4] 
That the sought-after evidence may have been relevant, material, and probative
of credibility does not mean that the trial court erred in sustaining
objections that the questions had been asked-and-answered and were
argumentative.  In his briefing, appellant makes no arguments regarding how or
why the trial court erred  in sustaining these objections.  Accordingly, we
find this issue is unsupported by proper argument.  See Tex. R. App. P. 38.1(h) (providing that briefs must
contain a clear and concise argument for the contentions made); Gallo v.
State, 239 S.W.3d 757, 768 (Tex. Crim. App. 2007) (holding defendant
inadequately briefed issue by failing to specify which rights were allegedly
violated).  Accordingly, we overrule the thirteenth issue.

We affirm the trial court=s judgment.

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed December 4, 2008.

Panel consists of
Chief Justice Hedges and Justices Guzman and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  As mentioned in the ABackground@ section above, after a lunch recess, Hobbs testified
that she recalled having thrown a candle at appellant at the time of the
incident and that he slapped her four additional times after she did so. 





[2]  The record does not indicate how defense counsel
knew Hobbs was going to add to her testimony, but it can be surmised he was
likely told so by the prosecutor during the break.





[3]  Article 36.03 further provides that when the
opposing party objects to the continued presence of a witness, a trial court
may require the party requesting exclusion to make an offer of proof to justify
the exclusion.  Tex. Code Crim. Proc. art. 36.03(b).  Here, although the
question of Hobbs= continued presence in the courtroom was hotly
debated, the trial court did not require and defense counsel did not make an
offer of proof.





[4]  After having just made objections that very similar
preceding questions were asked-and-answered and argumentative, the prosecutor
objected to an additional question by saying, A[o]bjection, Your Honor; that=s
improper.@  The trial court apparently interpreted this
objection to be of the same nature as the prior two and sustained it.