# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00727-CR

**Dustin Clark, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 331ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-15-207044, THE HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Dustin Clark was charged with five counts of engaging in organized criminal activity. *See* Tex. Penal Code § 71.02. At the end of the guilt-or-innocence phase, the jury found Clark guilty of all five charged offenses. During the punishment phase, the jury recommended that Clark be sentenced to seventeen years' imprisonment for the first, third, and fifth counts, to ten years' imprisonment for the second count, and to twelve years' imprisonment for the fourth count. *See id.* §§ 12.32, 71.02(b). The district court rendered its judgments of conviction in accordance with the jury's verdicts. In three issues on appeal, Clark contends that the district court erred by admitting extraneous-offense evidence. We will affirm the district court's judgments of conviction.

# BACKGROUND

As mentioned above, Clark was charged with engaging in organized criminal activity. The five counts arose from allegations that Clark impersonated a police officer and also committed several robberies. *See* Tex. Penal Code §§ 29.02, 37.11(a), 71.02. During the trial, the State presented evidence pertaining to the following five separate offenses:

**November 17, 2015, at approximately 8:20 p.m.:** three individuals impersonated police officers by using emergency lights on a car and attempted to initiate a traffic stop of a family in Buda, Texas. The individuals were wearing ski masks and hoodies and were holding handguns.

**November 17, 2015, at approximately 9:30 p.m.:** three individuals robbed a Golden Chick in Kyle, Texas. Two of the individuals were carrying handguns, and they each pointed the weapons at restaurant employees. Surveillance footage and photographs from inside the restaurant showed three individuals wearing dark ski masks and gloves and hoodies each of a different color—one red, one white, and one black.

**December 1, 2015, at approximately 9:20 p.m.:** three individuals robbed a convenience store named Webberville Grocery in Webberville, Texas. Surveillance footage and photographs from the store showed three offenders wearing ski masks and gloves. Two of the offenders were also wearing black hoodies and carrying handguns, and the last individual was wearing a red hoodie. The two individuals carrying the guns pointed the guns at two store employees.

**December 4, 2015, at approximately 9:00 p.m.:** three individuals robbed a ConocoPhillips gas station in Travis County, Texas. Surveillance footage and photos from inside the store showed three robbers wearing hoodies, ski masks, and gloves. Two of the hoodies were red in appearance, and the third was black in color. One of the offenders with a red hoodie was also wearing red pants. Two of the individuals carried handguns and pointed the guns at the store clerk. The individual wearing the black hoodie walked down a food aisle and grabbed various items before leaving the store.

**December 6, 2015, at approximately 9:20 p.m.:** three men robbed a Super Food Mart in Travis County, Texas. Surveillance footage and photographs from inside the store showed three offenders wearing hoodies and masks. Two of the individuals were holding handguns and wearing red hoodies, and they aimed their weapons at the store clerk. One of the individuals wearing a red hoodie also wore red pants. The third individual wore a dark hoodie, walked down one of the food aisles, and took various items before leaving the store.

During the trial, the State introduced evidence of a traffic stop of a vehicle being driven by Clark on December 9, 2015, and of events that occurred following the traffic stop. In particular, Officer Sheldon Banta testified that he initiated a traffic stop of the vehicle after the driver "failed to stop at the proper place at" a stop sign and failed to maintain a single lane. Next, Officer Virgil Villarreal explained that he responded to a call about the traffic stop, that three individuals were in the car, that the driver was identified as Clark, and that the two passengers were identified as Cedric McClain and Ryan Carson. In his testimony, Officer Villarreal related that he observed inside the car in plain view several pairs of gloves, a black-and-white bag with "a dark hoodie or sweatshirt" inside it, "a hat or a mask," red pants, "the back end of a pistol," candy, and cash. During Officer Villarreal's testimony, photos of the contents of the car were admitted into evidence.

After Officer Villarreal finished his testimony, Officer Sylvia Leal related that she had been investigating "a series of robberies" and that she received a call regarding the traffic stop after the officers involved in the traffic stop became suspicious that Clark and the two passengers might have been involved in those robberies. In her testimony, Officer Leal explained that she reviewed the surveillance footage from the robberies and that she was able to match Clark, Carson, and McClain with the individuals depicted on those recordings based on differences in height and other "mannerisms," including the way that Clark walked and wore a dark hoodie and shoes with "red laces" or boots. Additionally, Officer Leal related that she was able to determine that Carson generally wore "camouflage pants and . . . police-style boots" and that McClain "had an item of red in most of the videos and shiny basketball-type tennis shoes." Moreover, Officer Leal testified that the surveillance footage from the Conoco and Super Food Mart convenience stores depicted Clark taking candy from the two stores.

3

Next, Officer Leal related that she obtained a search warrant to search the car and that she found the following items in the car: three cell phones, red workout pants, a dark-colored hoodie, a blue hoodie, two ski masks, two sets of gloves, "an airsoft gun" or "a high-powered BB gun" that was "a replica of a Glock," and another airsoft gun that was "a replica of a Colt 1911." Further, Officer Leal explained that the car had been leased to Clark, that the car had a GPS device inside because it was "on lien," and that she obtained a search warrant for Clark's home and for the GPS information for the car and the cell phones recovered from the search of the car. Regarding the search of Clark's home, Officer Nathan Matteson testified that he found items generally associated with police officers, including "red and blue police lights for a vehicle."

During the trial, the State presented testimony and other evidence regarding the robbery of an Exxon station on November 30, 2015, in Jonestown, Texas. Surveillance footage from the store was admitted into evidence and played for the jury. On the recording, two individuals wearing dark hoodies are depicted entering the store at approximately 8:00 p.m. The first individual was not wearing a ski mask but was wearing a dark hoodie and gloves, and he went to a food aisle and took several items before leaving the store. The second individual was wearing a ski mask, a dark hoodie, and gloves, and he was carrying a handgun and pointed it at the store clerk.

Next, the State called Mark Sedwick to the stand to discuss the GPS analysis that he performed on Clark's car as well as on the cell phones belonging to Clark, McClain, and Carson. In his testimony, Sedwick explained that his analysis revealed that Clark's car and the phones associated with Clark and Carson were near the sites of the five charged offenses around the time that those offenses occurred. Similarly, Sedwick explained that his analysis showed that McClain's phone was near the site of the robberies occurring on December 4, 2015, and

4

December 6, 2015, around the time those offenses occurred. Next, Sedwick testified that he examined the phone and car records for the day of the Exxon robbery and that his analysis showed that the phone and vehicle associated with Clark were near the Exxon station at the time of the robbery but that the phone associated with McClain was not near the location of the robbery.

Finally, the State called Manny Fuentes to the stand to discuss the results of a forensic data extraction that he was able to perform on Carson's phone. During his testimony, Fuentes discussed text messages that were sent by and to Carson's phone during November and December of 2015. For example, Fuentes testified that the following messages were sent among Carson's, McClain's, and Clark's phones: "Tryna make sum bread tonight"; "U know anybody with bread we can snag n grab"; "That's what I figured n bring that piece u had from the other day"; "The first part is real easy where going to get some 'dirtys', then to a small place we'll be in and out in under a min a 3man job"; and "I was trying to say today is Tuesday n Popeyes got bread."

After both sides rested and closed, the jury found Clark guilty of all five charged offenses.

**DISCUSSION**

In his first two issues on appeal, Clark contends that the district court erred by admitting evidence pertaining to the traffic stop conducted after the robberies at issue because the evidence was impermissible extraneous-offense evidence and because the prejudicial value of the evidence outweighed any probative value. In his third issue on appeal, Clark argues that

5

the district court erred by admitting evidence regarding the robbery of the Exxon convenience store because the evidence was impermissible extraneous-offense evidence.

**Traffic Stop**

At the start of the trial and outside the presence of the jury, the State explained to the district court that it intended to call police officers to discuss how after performing a traffic stop of Clark's vehicle on December 9, 2015, and observing what was seen inside the vehicle in plain view, the police suspected that the vehicle's occupants were involved in the five charged offenses and subsequently searched the vehicle and Clark's home. At the hearing, the State also explained that there was another robbery in the area just prior to the traffic stop, that the three occupants of the vehicle matched the description of the individuals involved in that robbery, that there was a trial regarding those charges, and that Clark was found not guilty of that offense. However, the State explained that it did not intend to mention that contemporaneous robbery or argue that Clark and the other occupants were fleeing from that offense shortly before the traffic stop was initiated; instead, the State explained that it just wanted to mention that the traffic stop occurred in an effort to show how the three occupants became suspects through the police investigation.

In response, Clark argued that the evidence was irrelevant, that the evidence was impermissible extraneous-offense evidence, and that the prejudicial value outweighed the probative value. The district court overruled Clark's objections. Following those rulings, Officers Banta and Villarreal provided testimony regarding the traffic stop and the items that were seen in the car during the traffic stop, and Officer Leal testified regarding the search of

Clark's car that the investigating officers performed after obtaining a search warrant following the traffic stop.

*Relevance and Background Contextual Evidence*

Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

Under the Rules of Evidence, "[r]elevant evidence is admissible unless" provided otherwise by "the United States or Texas Constitution," "a statute," the Rules of Evidence, or "other rules prescribed under statutory authority," and evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Tex. R. Evid. 401, 402. However, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but this type of "evidence may be admissible for another purpose, such as proving motive,

7

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b). "Rule 404(b) . . . is a rule of inclusion rather than exclusion," *Chaparro v. State*, 505 S.W.3d 111, 115-16 (Tex. App.—Amarillo 2016, no pet.), and the "enumerated exceptions" listed under Rule 404(b) "are neither mutually exclusive nor collectively exhaustive," *Torres v. State*, 543 S.W.3d 404, 420 (Tex. App.—El Paso 2018, pet. ref'd). Accordingly, courts have explained that "extraneous-offense evidence, under Rule 404(b), is admissible to rebut a defensive theory raised in an opening statement or raised by the State's witnesses during cross-examination." *Bargas v. State*, 252 S.W.3d 876, 890 (Tex. App.— Houston [14th Dist.] 2008, no pet.). Also, "extraneous offense evidence may be admissible as contextual evidence." *Swarb v. State*, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd).

There are two forms of contextual evidence: "(1) 'same transaction contextual evidence,' which refers to other offenses connected with the primary offense; and (2) 'background contextual evidence' which includes all other general background evidence." *Blakeney v. State*, 911 S.W.2d 508, 514 (Tex. App.—Austin 1995, no pet.) (internal footnote omitted) (quoting *Mayes v. State*, 816 S.W.2d 79, 86-87 (Tex. Crim. App. 1991), *superseded on other grounds by* Tex. Code Crim. Proc. art. 38.37). "[B]ackground contextual evidence 'fill[s] in the background of the narrative and give[s] it interest, color, and lifelikeness.'" *Aguillen v. State*, 534 S.W.3d 701, 712 (Tex. App.—Texarkana 2017, no pet.) (quoting *Mayes*, 816 S.W.2d at 87) (alterations in *Aguillen*), and "provides an exception to rule 404(b)'s general proscription because its relevance stems not from a consequential fact, but because 'it illuminates a circumstance otherwise dimly perceived by the factfinder,'" *Lorence v. State*, No. 02-15-00398-CR, 2017 WL 4172077, at *11 (Tex. App.—Fort Worth Sept. 21, 2017, pet. ref'd) (mem. op.,

not designated for publication) (quoting *Mayes*, 816 S.W.2d at 85). "Typically, so-called 'background' evidence is admissible, not because it has particularly compelling probative value with respect to the elements of the alleged offense, but simply because it provides the jury with perspective, so that the jury is equipped to evaluate, in proper context, *other* evidence that more directly relates to elemental facts." *Langham v. State*, 305 S.W.3d 568, 580 (Tex. Crim. App. 2010). However, "[c]haracter evidence offered on the rationale that it is 'background' evidence helpful to a jury . . . is not admissible as one of the alternative purposes such evidence may be introduced under Rule 404(b)." *Mayes*, 816 S.W.2d at 88. In other words, "[b]ackground contextual evidence . . . is not admissible under Rule 404(b) when it includes an impermissible character component." *Blakeney*, 911 S.W.2d at 514; *see Miller v. State*, 2 S.W.3d 475, 480 (Tex. App.—Tyler 1999, no pet.).

On appeal, Clark contends that the evidence pertaining to the traffic stop was irrelevant, was impermissible character evidence, and was not admissible as an exception under Rule 404(b) because it was not background information necessary for the jury's consideration.[1] Regarding the potential use of the evidence as background contextual evidence, Clark argues that the traffic stop was initiated because the police believed that he and the occupants had been involved in a robbery "that [wa]s separate and distinct from each robbery tried under the instant cause number" and were fleeing the scene of that offense. As such, Clark contends that the evidence contains an impermissible character component and that the Court of Criminal Appeals

---

[1] During the trial, the State also argued that the evidence was admissible as evidence that Clark, Carson, and McClain were acting in concert or in a combination as charged in the indictment and as evidence that the three had a plan. *See* Tex. R. Evid. 404(b). In his brief, Clark argues that the evidence was not admissible for those purposes. Given our ultimate resolution that the evidence was admissible as background contextual evidence, we need not reach these arguments. *See* Tex. R. App. P. 47.1.

has explained that character evidence may not be admitted as background contextual evidence. *See Mayes*, 816 S.W.2d at 87-88. Moreover, Clark argues that evidence pertaining to the traffic stop was not necessary to prove "the facts of consequence" because it occurred days after the alleged robberies at issue and because he "did not make an issue during the trial of 'how' or 'why' [he] was made the focus of the investigation for the instant cases." Accordingly, Clark urges that the evidence amounted to inadmissible character evidence or inadmissible extraneous-offense evidence.

Initially, we note that although the traffic stop may have commenced in part by the possibility that Clark and the occupants had been involved in a robbery on that day, the State explained that it would not mention that to the jury. Instead, Officer Banta explained that he initiated the traffic stop after observing Clark fail to maintain his lane and to properly stop at a stop sign. Accordingly, we do not agree with Clark's suggestion that the evidence regarding the traffic stop presented the type of character evidence that the Court of Criminal Appeals has explained may not be admitted as background contextual evidence. *See id.* at 88 (concluding that evidence that defendant was "housed in administrative segregation" in prison at time of alleged offense constituted background evidence but "also possessed a character component" because evidence conveyed that defendant "was 'a threat to the general population of the prison, a threat to staff, threat to other inmates, and generally cannot get along'"); *see also* Tex. R. Evid. 404(b) (providing that evidence of crime or wrong is not admissible to prove character to show that person acted consistently with that character on particular occasion).

Moreover, although the evidence pertaining to the traffic stop may not itself have been relevant to elements of the alleged offenses, the evidence did help to establish how the police linked Clark and the occupants to the charged offenses. Before evidence pertaining to the

10

traffic stop was admitted, various witnesses testified regarding the five offenses, but no one's testimony linked any suspect to those offenses; in fact, the witness testimony and surveillance footage demonstrated that the offenders were wearing clothing that concealed their identities during each offense. Further, the evidence established that after detaining Clark the officers observed in plain view items that appeared to be similar to the items that the offenders used in the robberies and obtained warrants to search the car and Clark's home based on those observations. Evidence regarding those searches was presented that ultimately tied Clark, Carson, and McClain to the charged offenses. *See Lorence*, 2017 WL 4172077, at *12 (determining that evidence that defendant "was a part of a murder-for-hire scheme" was marginally relevant and admissible as background contextual evidence because "[o]therwise[] [a]ppellant's alleged participation in the crime would have appeared random, occurring in a vacuum and making little sense"); *see also DeLeon v. State*, 937 S.W.2d 129, 135-36 (Tex. App.—Waco 1996, pet. ref'd) (determining that trial court did not abuse its discretion by admitting evidence that defendant was in stolen car as background contextual evidence because it explained his motive for attacking police officer "at a simple traffic stop for speeding").

In light of the preceding, we conclude that the district court did not abuse its discretion by concluding that the evidence pertaining to the traffic stop was relevant and was admissible as background contextual evidence. *See Mell v. State*, No. 07-14-00207-CR, 2015 WL 5244423, at *2-3 (Tex. App.—Amarillo Sept. 3, 2015, no pet.) (mem. op., not designated for publication) (concluding that trial court did not abuse its discretion by determining that evidence was admissible as permissible "background contextual evidence" where "the jurors well could have been confused by the officer's immediate arrest of a passenger in a vehicle stopped for a minor traffic offense"); *see also Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim.

11

App. 2011) (stating that "[a] trial court's 404(b) ruling admitting evidence is generally within . . . zone [of reasonable disagreement] if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue").

*Rule 403*

As set out above, Clark also objected to the admission of the evidence pertaining to the traffic stop under Rule of Evidence 403.

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted). Moreover, reviewing courts should afford trial courts a high level of deference regarding admissibility determinations under Rule 403. *See Robisheaux v. State*, 483 S.W.3d 205, 218 (Tex. App.—Austin 2016, pet. ref'd).

When evaluating the admissibility of evidence under Rule 403, courts should balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnote omitted); *see Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (explaining that "probative value" refers to how strongly evidence makes existence of fact more or less probable and to how much proponent needs evidence and that "unfair prejudice" considers how likely it is that evidence might result in decision made on improper basis, including emotional one).

On appeal, Clark contends that the background contextual evidence pertaining to the traffic stop should have been excluded under Rule 403 because he "did not raise any issue" during his opening statement or cross-examination of witnesses regarding how the investigation of Clark began. Further, Clark argues that the evidence regarding the traffic stop established that Clark was in the same car with the individuals that he was alleged to have been acting in a combination with, that they were in possession of items and clothing similar to that seen on the surveillance recordings, and that they were wearing some items of clothing that were similar to clothing the suspects were seen wearing on the recordings. Moreover, Clark asserts that the recovered items "were the only real evidence to put a name to the robber that also wore similar items." Accordingly, Clark urges that "[a]ny probative value in admitting the evidence . . . as contextual 'background' evidence . . . is substantially outweighed by [the] prejudicial effect it had to have on the jury."

13

We do not agree with Clark's broad assertion regarding what the extraneous-offense evidence was. The alleged misconduct at issue was the behavior that resulted in the police initiating the traffic stop. Although clothing and other items were observed in Clark's car after the traffic stop occurred, the evidence pertaining to the contents of the car was not extraneous-offense evidence and was instead evidence regarding the offenses for which Clark was being tried. Accordingly, our analysis is limited to the evidence pertaining to the traffic stop.

Turning to the 403 factors, we note that although the evidence pertaining to the traffic stop does not help to establish the elements of the charged offenses, the evidence did, as set out earlier, help establish how the police discovered the items recovered during the search of Clark's car and home and, thereby, linked Clark to the charged offenses. Accordingly, the district court could have reasonably determined that the probative value, although perhaps minor, either weighed in favor of admission or was neutral regarding the admission.

Regarding the State's need for the evidence, we note that the State did present other evidence linking Clark to the five charged offenses through the testimony of witnesses indicating that Clark's car and phone as well as McClain's and Carson's phones were near the locations of the charged offenses during the relevant time periods. However, when the district court made its ruling, no other evidence had been admitted that affirmatively linked Clark to the five offenses. *See Khoshayand*, 179 S.W.3d at 784. Accordingly, the district court could have reasonably concluded that the State's need for the evidence weighed in favor of its admission.

As for the potential of the evidence to suggest a decision on an improper basis, s*ee Gigliobianco*, 210 S.W.3d at 641 (stating that evidence might encourage decision on improper basis if "it arouses the jury's hostility or sympathy . . . without regard to the logical probative force of the evidence"), we note that Officer Banta testified that he initiated the traffic stop

14

because he observed Clark commit traffic violations. Moreover, nothing in the testimony from the officers regarding the traffic stop itself was inflammatory or otherwise prejudicial beyond stating that Clark potentially committed two traffic offenses. *Cf. Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820, at *5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication) (explaining that "[w]hen the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice"). Accordingly, the district court could have reasonably determined that the potential for the evidence to result in a decision on an improper basis either weighed in favor of admission or was neutral regarding admission.

Turning to the potential for the evidence to confuse the jury and for the jury to give undue weight to the evidence, the district court could have reasonably concluded that the evidence regarding the traffic stop would not "distract the jury from the main issues in the case" because the evidence linked Clark to the charged offenses. *See Gigliobianco*, 210 S.W.3d at 642. Similarly, given that the evidence did not address a complex subject matter and was instead a limited description of a traffic stop, the district court could have reasonably concluded that the jury would not give undue weight to the evidence. *Cf. id.* at 641 (explaining that scientific evidence is one type of evidence that might mislead jury not properly equipped to consider probative value). Accordingly, the district court could have reasonably determined that these factors weighed in favor of admission.

Regarding the time needed to present the evidence, we note that the State explained that it intended to limit its discussion to the fact that the traffic stop occurred and did not intend to discuss the other robbery that Clark was allegedly fleeing from at the time that the traffic stop happened. Consistent with that assessment, Officers Banta, Villarreal, and Leal

15

briefly mentioned the traffic stop in their testimonies, and the amount of testimony discussing the traffic stop was a small portion of the reporter's record, which was hundreds of pages in length. Accordingly, the district court could have reasonably determined that the time needed to develop the evidence weighed in favor of admission of the evidence.

Given our standard of review, the presumption in favor of admissibility, and the resolution of the factors discussed above, we cannot conclude that the district court abused its discretion by overruling Clark's Rule 403 objection. *Cf. Work v. State*, No. 03-18-00244-CR, 2018 WL 2347013, at *12 (Tex. App.—Austin May 24, 2018, pet. granted) (mem. op., not designated for publication) (affirming trial court's ruling denying Rule 403 objection when majority of factors weighed in favor of admission of evidence).

For all the reasons previously given, we overrule Clark's first and second issues on appeal.

**Exxon Robbery**

During the trial, the State asked the district court to admit evidence regarding the robbery of an Exxon station on November 30, 2015. The State asserted that Clark and Carson committed the offense and that surveillance footage from the store captured images of Clark's face. When discussing why the evidence should be admitted, the State argued that Clark opened the door to the testimony by making identity an issue. The district court determined that identity had become an issue "through the opening statement or through the development of the evidence" and that the evidence would be relevant to whether Clark committed the charged offenses.

16

In his final issue on appeal, Clark contends that the district court erred by admitting evidence regarding the robbery of the Exxon station. Specifically, Clark argues that the district court erred because he did not make identity an issue and that, therefore, the extraneous evidence was not admissible to establish his identity as one of the offenders. Alternatively, Clark argues that even if identity was an issue, the evidence of the Exxon robbery should not have been admitted because there was nothing distinctive about the charged offenses or the extraneous offense to tie those offenses together and establish the identity of the perpetrators. More specifically, Clark asserts that the number of offenders involved in the Exxon incident differed from the five charged offenses, that the colors of the hoodies used in the various offenses differed, that the clothing of the offenders changed, that none of the clothing was distinctive, that none of the offenses occurred at the same time of day, and that the robberies occurred at different types of businesses or locations (e.g., roadway, restaurant, and convenience stores).

As set out in the previous issues, extraneous-offense evidence may be admitted under Rule 404(b) to prove identity or to rebut a defensive theory presented during a defendant's opening argument or through his cross-examination of the witnesses. *See* Tex. R. Evid. 404(b); *Bargas*, 252 S.W.3d at 890. In this case, the district court did not abuse its discretion by determining that the identity of the offenders was at issue. Although there was no dispute regarding whether the offenses occurred, the issue in this case was whether the jury could have determined beyond a reasonable doubt that Clark, McClain, and Carson were the individuals responsible for the five offenses. In his opening statement, Clark pointed out that identity was an issue when he stated as follows:

17

But I want you to keep one thing in mind as you go forward. Their burden is not to prove his car was there. Their burden is not to prove that his phone was anywhere. Their burden is to prove that he was there. Okay? And as you listen to all the witnesses, I want you to tune in on how they can identify if he was present at any of those places. And at the very end you're going to find they did not prove that he was at any of these places.

Similarly, when cross-examining the State's witnesses, Clark questioned whether Clark's identity had been established. For example, when Officer Leal testified that she was able to determine whether any of the offenders depicted in the surveillance recordings was Clark, Clark objected, stated that there was no proof to support Officer Leal's assertions, and then questioned Officer Leal about the clothing appearing in the surveillance footage and any DNA testing performed in the case. In her testimony, Officer Leal admitted that no DNA testing was performed on any of the recovered items of clothing and that the types of clothing worn by the offenders were common. In light of the preceding and other elicited testimony, the district court could have reasonably determined that the issue of the identity of the offenders had been raised.

However, "[m]erely raising the issue of identity does not automatically render the extraneous evidence admissible." *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). "When the extraneous offense is introduced to prove identity by comparing common characteristics, it must be so similar to the charged offense that the offenses illustrate the defendant's 'distinctive and idiosyncratic manner of committing criminal acts.'" *Id.* (quoting *Martin v. State*, 173 S.W.3d 463, 468 (Tex. Crim. App. 2005)). In other words, "[w]hen identity is a material issue, there is a great need to establish the degree of similarity in the extraneous matters to prove *modus operandi*," which means that "the pattern and characteristics of the charged crime and the extraneous offenses are so distinctively similar that they constitute a 'signature.'" *Chaparro*, 505 S.W.3d at 116 (quoting *Segundo v. State*, 270 S.W.3d 79, 88 (Tex.

18

Crim. App. 2008)). Common characteristics that may make a charged offense similar to an extraneous offense include the "proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Segundo*, 270 S.W.3d at 88. "No rigid rules dictate what constitutes sufficient similarities," and it is usually "the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or *modus operandi*" of an individual. *Id.*

During the trial, the State presented evidence that five offenses occurred between November 17, 2015, and December 6, 2015, that the offenses occurred between 8:00 p.m. and 9:30 p.m., that the offenses were committed by three individuals wearing hoodies and ski masks, that some of the offenders were carrying handguns, and that they pointed the weapons at the employees of the places being robbed. Moreover, evidence was presented establishing that four of those offenses involved the robbery of three convenience stores and a fast food restaurant by individuals wearing gloves. In each of those robberies, at least one person was wearing a black hoodie. In addition, during the robbery of two of the convenience stores, an individual wearing a black hoodie grabbed food from a food aisle before leaving the store. All five of the charged offenses occurred in Austin or in the surrounding areas. Similarly, the Exxon robbery occurred at approximately 8:00 p.m. near the Austin area. Although there were only two offenders involved in this robbery and although one was not wearing a ski mask, both were wearing dark hoodies and gloves, and one of the individuals was carrying a handgun and pointed it at the store clerk. In addition, the offender not wearing a ski mask went down a food aisle and took several items before leaving the store. [2]

---

[2] When objecting to the admission of this extraneous-offense evidence, Clark did not object under Rule of Evidence 403. However, in his brief, Clark contends that an analysis under

Rule 404(b) must assess whether the probative value of the extraneous-offense evidence is substantially outweighed by the danger of unfair prejudice. As support for that proposition, Clark refers to *De La Paz v. State*, 279 S.W.3d 336 (Tex. Crim. App. 2009). In that case, the Court of Criminal Appeals did state that a trial court's ruling admitting extraneous-offense evidence will be upheld "if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *Id.* at 344. However, in that case, the defendant objected under Rules 404(b) *and* 403. *Id.* at 340, 348. Accordingly, the section of the *De La Paz* opinion highlighted by Clark may have been a summary of the requirements under both Rules 404(b) and 403 rather than an expression that an appellate issue pertaining to an objection under Rule 404(b) alone requires a weighing of the prejudicial and probative value of the disputed evidence.

Indeed, prior to *De La Paz*, the Court of Criminal Appeals explained that once a "trial judge has ruled on whether the evidence is relevant beyond its character conformity value, he has ruled on the full extent of the opponent's Rule 404(b) objection" and that "[t]he opponent must then make a further objection based on Rule 403, in order for the trial judge to weigh the probative and prejudicial value of the evidence." *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997); *see Johnston v. State*, 145 S.W.3d 215, 220 (Tex. Crim. App. 2004) (explaining that potential for unfair prejudice stemming from extraneous offense needs to be considered only if objection under Rule 403 is made in addition to objection under Rule 404); *Montgomery v. State*, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1990) (on reh'g) (stating that defendant must object under both Rules to preserve error regarding prejudicial nature of extraneous-offense evidence). Consistent with that statement, this Court and other courts of appeals have explained that when a defendant objects under Rule 404(b) alone, the defendant does not preserve a complaint regarding whether the evidence should have been excluded because it was substantially more prejudicial than probative. *See Swain v. State*, No. 01-18-00377-CR, 2019 WL 2345415, at *5 (Tex. App.—Houston [1st Dist.] June 4, 2019, pet. ref'd) (mem. op., not designated for publication); *Lewis v. State*, No. 03-01-00512-CR, 2002 WL 1723778, at *2, *5 (Tex. App.—Austin July 26, 2002, pet. ref'd) (op., not designated for publication). However, the Court of Criminal Appeals has also stated that there is a "Rule 403 balancing test that is an inherent part of Rule 404(b)." *Castaldo v. State*, 78 S.W.3d 345, 350 (Tex. Crim. App. 2002); *see Garcia v. State*, No. 14-04-00399-CR, 2006 WL 664182, at *3 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (mem. op., not designated for publication).

Even if we are required to consider the Rule 403 factors when performing our review of an admissibility determination under Rule 404(b), we would conclude that the probative value of the evidence pertaining to the Exxon robbery was not substantially outweighed by the danger of "unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *See* Tex. R. Evid. 403. As discussed above, the evidence was relevant to establish Clark's identity as one of the offenders for the charged offenses. At the time that the district court made its ruling, the only evidence potentially linking Clark to the charged offenses was the discovery of items in his car and in his home that were similar to items used in the offenses and the testimony from Officer Leal indicating that she was able to ascertain which

In light of these similarities, we cannot conclude that the district court abused its discretion by admitting the extraneous-offense evidence. *Cf. Swain v. State*, No. 01-18-00377-CR, 2019 WL 2345415, at *4 (Tex. App.—Houston [1st Dist.] June 4, 2019, pet. ref'd) (mem. op., not designated for publication) (determining that offenses were "sufficiently similar" to warrant admission where robberies occurred within one hour of each other, involved individuals wearing similar clothing, had similar victims being held at gunpoint, and had other similarities); *Hill v. State*, No. 01-16-00595-CR, 2017 WL 2290201, at *5 (Tex. App.—Houston [1st Dist.] May 25, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that extraneous offense was sufficiently similar where robberies occurred within one day of each other, where robberies were committed "in the Houston metropolitan area," where robberies "occurred at a gas station with a convenience store," where robbers wore masks, where robbers "demanded money at gunpoint from the cashiers," where robbers used "black handgun," and where robbers wore dark hoodie, baseball cap, and "a black mask"); *see also Page*, 213 S.W.3d at 338 (explaining that "extraneous-offense evidence" does not need "to be completely identical to the charged offense to be admissible to prove identity").

For these reasons, we overrule Clark's third issue on appeal.

---

of the masked offenders was Clark from the surveillance footage. Moreover, the misconduct depicted on the recording from the Exxon station was no more gruesome or heinous than the misconduct captured on the surveillance footage for the charged offenses, and the district court provided a limiting instruction before the jury was able to view the Exxon footage. Additionally, the amount of time devoted to the extraneous offense was brief compared to the amount of time spent on the charged offenses, and the evidence did not involve a complicated or otherwise confusing subject matter and was related to the charged offenses.

21

## CONCLUSION

Having overruled all of Clark's issues on appeal, we affirm the district court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   January 15, 2020

Do Not Publish