

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-14-00153-CR

_____

CAGE CHAPARRO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2013-437,245; Honorable Jim Bob Darnell Presiding

November 8, 2016

## OPINION

### Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Following a plea of not guilty, Appellant, Cage Chaparro, was convicted by a jury of aggravated robbery with an affirmative finding on use of a deadly weapon.[1] After Appellant entered a plea of true to an enhancement paragraph, the trial court assessed his punishment at fifty years confinement. Initially, this appeal was filed pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and

---

[1] TEX. PENAL CODE ANN. § 29.03(a) (West 2011). Aggravated robbery is a first degree felony. *Id.* at § 29.03(b).

Appellant's conviction was affirmed. On motion for rehearing, this court was advised that the appellate record was incomplete, and therefore an independent review of the entire record could not have been made before determining that the appeal was frivolous. Specifically, the reporter's record was missing Appellant's juvenile certification hearing.[2] Consequently, the motion for rehearing was granted and the opinion and judgment of March 21, 2016, were withdrawn. Supplementation of the record was ordered and the parties were permitted to amend their briefs. *See Chaparro v. State*, No. 07-14-00153-CR, 2016 Tex. App. LEXIS 5144, at *4 (Tex. App.—Amarillo May 12, 2016, order) (not designated for publication). With new appointed counsel, Appellant now presents a meritorious appeal. By a sole issue, he maintains the trial court abused its discretion in admitting evidence of three extraneous offenses during the guilt/innocence phase of trial to prove identity even though identifying him as a suspect was unnecessary based on the State's ability to convict him as a party to the offense. We affirm.

BACKGROUND

On October 22, 2012, at approximately 2:00 a.m., Jesse and Christie Peterson testified they were awakened by a loud noise. Two suspects entered their bedroom and ordered them to the ground while they stole items from the house. According to the Petersons, the suspects wore white masks and dark gloves and one of them wore a distinctive letter jacket. A third suspect stood outside the bedroom and wore an orange

---

[2] Appellant was sixteen years old when he was arrested. Due to his extensive juvenile referrals, the Lubbock County Juvenile Justice Center conducted an investigation for discretionary waiver of jurisdiction to have Appellant certified to be tried as an adult for the underlying offense. At the certification hearing, his juvenile community supervision officer testified that she had supervised Appellant since 2008 for numerous referrals. At the conclusion of the hearing, the trial court determined there was probable cause to waive juvenile jurisdiction. Appellant does not contest the trial court's determination in this appeal.

2

mask.[3]  One of the suspects used a shotgun and another used a knife to threaten the Petersons.  The third suspect was also armed with a firearm.  The Petersons testified that at least one of the suspects had a Hispanic accent and referred to one of his cohorts as "Chicon."[4]

Between the night of October 21, 2012, and the early morning hours of October 22, 2012, three additional aggravated robberies similar to the Peterson robbery occurred.  Prior to the Peterson robbery, on October 21st, a home invasion occurred at the residence of Brent Wilson's grandmother between 10:30 p.m. and midnight.  Brent was living with his grandmother while attending college.  He testified he heard a loud noise and went outside where he encountered two suspects wearing white masks in the driveway.  One suspect holding a large knife approached him and held the knife to his throat and demanded money.  Brent testified he did not have much money on him and offered the suspects his PlayStation 3 game console instead.  Brent noticed a white vehicle, later identified as a Mitsubishi Galant driven by a co-defendant, pull up to the curb.  He realized it was the get-away vehicle.  A passenger exited the vehicle and spoke with one of the suspects.  After retrieving the game console, the suspects fled in the white vehicle.

In the second robbery, the victim, Christopher Payne, testified that on October 22nd at approximately 12:30 a.m., a white Mitsubishi Galant followed him from an intersection.  As he pulled into his friend's driveway, the vehicle followed him and two armed suspects wearing white masks exited from the back seat of the vehicle.  One of

---

[3] The masks were Halloween masks.

[4] One of the co-defendant's nickname was "Chingon."  The evidence established that Appellant commonly referred to a co-defendant by that nickname.

3

the suspects, later identified as Appellant, approached Payne's window and, while exhibiting a shotgun, forced him out of his vehicle and onto the ground. When the suspects did not find anything of value in the vehicle, they stole Payne's Nike flip flops. He testified the other suspect was armed with a very long knife. He also believed that based on their accents, the suspects were Hispanic.

On October 23rd, there was an attempted daytime robbery. Shortly after the attempt, a white vehicle driven by a co-defendant was stopped. The vehicle matched the description of the white Mitsubishi Galant present at the previously described robberies. A search of the vehicle revealed two white masks and two pairs of gloves matching the description given by the Petersons.

Late at night, on October 27, 2012, a third aggravated robbery occurred at the residence of Robin Hackett. Ethan Greenlee, a co-defendant, who had done yard work for Hackett, testified he reached through a doggie door and unlocked the back door. Hackett testified she heard a scuffle and then a suspect pointed a "rifle" at her. A second suspect was holding what she thought looked like a machete. She heard voices coming from the back part of the house and recognized Greenlee's voice from when he had worked for her.

The next day, a red Impala was stopped by a police officer for an expired inspection sticker of more than two years. Appellant was driving the vehicle and did not have a license or proof of insurance. His older brother Race, who was also in the vehicle, was arrested on an outstanding warrant. Race advised the officer that there was marihuana in the vehicle. Appellant and two other occupants were arrested for possession of marihuana. The vehicle was impounded and searched. Items that had

4

been reported stolen from the Hackett residence were found in the vehicle. Also found were white masks and gloves similar to the ones described by the Petersons. Additionally, Appellant was wearing a distinctive letter jacket similar to the one described by the Petersons.

Upon discovering that the items recovered from the red Impala had been reported stolen, police officers arrested Appellant and the occupants of his vehicle. A search warrant was obtained for Appellant's residence where he resided with his mother and two older brothers. In addition to the search warrant, Appellant's mother gave consent to search the residence. The officers found some of the property belonging to the Petersons as well as other victims of the similar robberies.

The masks and gloves found were tested for DNA by a forensic scientist. She testified at trial that Appellant could not be excluded as a contributor on a pair of gloves found in the driver's back seat pocket of the Mitsubishi Galant. Appellant was also a contributor on a right-handed glove left behind at the Hackett robbery and a left-handed glove found in the front driver's seat of the red Impala after the Hackett robbery. The two gloves appeared to be a complete pair. Appellant's DNA was also found on a white mask that was taken from the red Impala.

During Appellant's trial, in exchange for testimonial immunity, Greenlee testified that Appellant told him he was involved in the Payne robbery as well as the Peterson robbery. Specifically, Appellant told Greenlee he used a shotgun to tap on Payne's car window. Appellant and his co-defendants told Greenlee they were using masks and gloves to conceal their identity. Greenlee also testified to the details of his involvement in the Hackett robbery as well as Appellant's involvement. He recalled Appellant

5

wearing a letter jacket similar to the one described by the Petersons during the timeframe of the robberies. According to Greenlee, Appellant asked him to pawn several items stolen from the Petersons because Appellant did not have any identification usually required when pawning items.

Following presentation of the evidence in the guilt/innocence phase of trial, the jury found Appellant guilty and the case proceeded to the punishment phase. After a lengthy presentation of punishment evidence, including testimony from Appellant, the trial court sentenced him to fifty years confinement.

By his sole issue, Appellant challenges the trial court's ruling admitting evidence of the three extraneous robberies during the guilt/innocence phase of trial because "identity was not a material issue in the case and the potential prejudicial effect of the extraneous matters was substantial." We disagree.

APPLICABLE LAW

Rule 404(b) of the Texas Rules of Evidence is a rule of inclusion rather than exclusion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). The rule excludes extraneous offenses offered solely to show that a defendant acted in conformity with bad character by committing the charged offense. *Id.* However, extraneous offenses are admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b); *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004).

6

Whether extraneous-offense evidence has relevance apart from character conformity is a question for the trial court. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). The trial court first determines whether the evidence is relevant to a material issue in the case and then whether the evidence should be admitted as an exception to Rule 404(b). *Rogers v. State*, 853 S.W.2d 29, 32 (Tex. Crim. App. 1993).

Rule 403 of the Texas Rules of Evidence favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Martinez v. State*, 327 S.W.3d 727, 737 (Tex. Crim. App. 2010). Although admissible under Rule 404(b), evidence may still be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Unfair prejudice refers not to an adverse or detrimental effect of evidence but to an undue tendency to suggest a decision on an improper basis, commonly an emotional one. *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence. *Id.*

Under Rule 403, the trial court balances (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already

7

admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). These factors may well blend together in practice. *Id.* at 642.

The general rule is that the defendant is to be tried only for the offense charged, not for any other crimes or for being a criminal generally. *Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008). However, one of the main rationales for admitting extraneous offenses is to prove the identity of the offender. *Id.* When identity is a material issue, there is a great need to establish the degree of similarity in the extraneous matters to prove *modus operandi*. *See Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987). *See also Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006).

The theory of relevancy is usually that of *modus operandi* in which the pattern and characteristics of the charged crime and the extraneous offenses are so distinctively similar that they constitute a "signature." *Segundo*, 270 S.W.3d at 88. Common characteristics that may make extraneous offenses similar to the charged offense "may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Id.*

STANDARD OF REVIEW

A trial court's ruling on the admissibility of extraneous offenses is reviewed for abuse of discretion. *Devoe*, 354 S.W.3d at 469. As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion and the trial court's ruling will be upheld. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (on reh'g)). The trial court's ruling admitting evidence under Rule

8

404(b) is generally within the zone of reasonable disagreement "if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe*, 354 S.W.3d at 469.

ANALYSIS

Just prior to opening arguments, the trial court conducted a hearing to determine the admissibility of the three extraneous robberies the State sought to introduce to establish identity because the suspects had concealed their identities in the Peterson robbery with masks and gloves. The State argued that because identity was an issue, it had a substantial need for the extraneous offenses to show a unique common signature and pattern that would corroborate Appellant's participation in the Peterson robbery.

The defense objected to admission of any extraneous-offense evidence and proceeded with the theory that Appellant's older brother, Race, was the perpetrator. The defense argued the State would be unable to prove that Appellant committed the extraneous offenses. The trial court ruled the extraneous offenses would be admissible and that the jury would be instructed on the use of extraneous offenses.[5] During the course of the lengthy trial, defense counsel repeatedly objected to the extraneous-offense evidence citing Rules 401, 402, 403, and 404 of the Texas Rules of Evidence.

In his argument on appeal, Appellant maintains the extraneous-offense evidence of other robberies was unnecessary for the State to establish his identity because there

---

[5] In the court's charge, the jury was instructed as follows:

[y]ou are further charged that if there is any evidence before you in this case tending to show that the defendant herein committed offenses other than the offense alleged against him in the indictment, you cannot consider said testimony for any purpose unless you find and believe, beyond a reasonable doubt, that the defendant committed such other offenses . . . you may then consider the same in determining the preparation, plan, identity and for no other purpose.

9

was sufficient evidence of his guilt under the law of parties on which the jury was instructed and because Greenlee's testimony supported the State's case. Appellant concludes the only possible use of extraneous offenses by the State was to prove character conformity which is prohibited. We disagree.

Identity was contested at trial. Beginning with his opening statement, defense counsel placed identity at issue by telling the jury there were five suspects in the Peterson robbery but only three committed the crime and the State was seeking a conviction on "guilt by association." Appellant's defensive theory was that his brother was the perpetrator in the Peterson robbery and promoted that theory throughout trial. In closing arguments, defense counsel again implicated Appellant's brother in the Peterson robbery. *See Sharper v. State*, 485 S.W.3d 612, 621 (Tex. App.—Texarkana 2016, no pet.) (making identity an issue by asserting that another person was the perpetrator).

There was no direct evidence connecting Appellant to the Peterson robbery. Thus, the State's case was based on circumstantial evidence, and when identity is a contested issue, admission of extraneous offenses may be necessary to establish identity.[6] *Devoe*, 354 S.W.3d at 470-71. Due to the lack of direct evidence, the State established a need for the extraneous offenses to establish Appellant's "handiwork" of committing armed robberies and concealing his identity with masks and gloves. The State was tasked with establishing that Appellant did in fact commit the extraneous offenses. This was accomplished through testimony and DNA evidence. Appellant's

---

[6] Although Greenlee's testimony placed Appellant at the Peterson robbery, his testimony "should be viewed with a measure of caution" because of his immunity deal. *See Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998).

DNA was found in the gloves and one of the white masks worn by him during in the extraneous robberies. Property stolen from victims of the extraneous robberies was found in Appellant's home. Greenlee testified that Appellant asked him to pawn some of the stolen property. Payne testified that one of the suspects who robbed him was wearing a distinctive letter jacket—a jacket worn by Appellant and described by the Petersons.

Appellant's argument that the State had no need to introduce the extraneous offenses because the evidence was sufficient under the law of parties to prove his involvement with the Peterson robbery is without merit. A similar argument was rejected by the Dallas court of appeals. *See Stulce v. State*, No. 05-14-01226-CR, 2016 Tex. App. LEXIS 8567, at *7-8 (Tex. App.—Dallas Aug 9, 2016, no pet.) (mem. op., not designated for publication) (rejecting the appellant's argument to conduct a sufficiency review and instead conducting an abuse of discretion review on admission of extraneous offenses). *See also Mason v. State*, 720, 728, 740 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd), *cert. denied*, __ U.S. __, 135 S. Ct. 1181, 191 L. Ed. 2d 139 (2015) (affirming conviction under the law of parties and finding no abuse of discretion in admission of extraneous offenses because they were highly probative of the appellant's identity); *Gonzalez v. State*, No. 14-11-00188-CR, 2012 Tex. App. LEXIS 4834, at *26, *23-24 (Tex. App.—Houston [14th Dist.] June 19, 2012, pet. ref'd) (affirming conviction under the law of parties and finding no abuse of discretion in admission of evidence of a seven-robbery crime spree because identity was a contested issue).

Additionally, admission of the extraneous offenses established a *modus operandi* of the robberies including the use of gloves, distinctive Halloween masks, a shotgun, and a large knife. Other common characteristics that the Peterson robbery shared with the extraneous robberies included proximity in time and place as well as the letter jacket worn by Appellant. The robberies all occurred in the span of six days (October 21st through October 27th), late at night, and the Peterson and Wilson robberies occurred in the same neighborhood. The Peterson robbery was part of a "signature" shared with the Wilson, Payne, and Hackett robberies.

In applying Rule 403 of the Texas Rules of Evidence and considering the trial court's limiting instruction to the jury on the use of extraneous offenses, we find that admission of the extraneous robberies was not substantially outweighed by any danger of unfair prejudice. There is nothing to indicate that the jury reached its verdict at the guilt/innocence phase of trial based on an improper or emotional basis. We conclude the trial court did not abuse its discretion in admitting the three extraneous robberies into evidence. Appellant's sole issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Publish.