# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00040-CR

### Stephen Shepard Clifford, Appellant

### v.

### The State of Texas, Appellee

### FROM THE 51ST DISTRICT COURT OF STERLING COUNTY
### NO. 982, THE HONORABLE CARMEN DUSEK, JUDGE PRESIDING

## O P I N I O N

Stephen Shepard Clifford was charged with aggravated robbery, and the indictment included an enhancement paragraph alleging that he had a prior felony conviction. *See* Tex. Penal Code §§ 12.42, 29.02-.03. At the conclusion of the guilt-innocence phase, Clifford was convicted of the aggravated robbery. During the punishment phase, Clifford pleaded true to the enhancement allegation and was sentenced to thirty years' imprisonment. *See id.* § 12.42. In two related issues on appeal, Clifford challenges the trial court's ruling admitting evidence of another aggravated robbery during the guilt-innocence phase. We will affirm the trial court's judgment of conviction.

## BACKGROUND

Clifford was charged with committing aggravated robbery at a Stripes convenience store in Sterling City, Texas, on June 23, 2019. The offense occurred shortly after

6:00 a.m. During the trial, surveillance footage from the convenience store was admitted into evidence and published to the jury. On the recordings, an individual enters the store holding a gun and wearing a green hoodie, a black and white skull full-face mask, black gloves, black shoes with another lighter color on them, and light jeans with decorative markings above the knees. After the masked individual points the gun at a customer approaching the register, the customer steps back from the register. The masked individual then points the gun at an employee behind the register and demands that the employee open the cash register drawer. While the employee opens the drawer, the masked individual points the gun at another customer eating breakfast at a table and tells the customer not to call the police. After the employee presents the cash register drawer, the individual grabs the money from the drawer. Before leaving the store, the individual points the gun at the employee and a customer and threatens to shoot them before firing a shot into the ceiling of the store. The recording also shows another individual waiting outside the store. After the offender in the store leaves the store, he and the person outside quickly leave the premises.

At trial, the store employee as well as the two customers testified regarding the incident. The employee described the offender in the store as a white man wearing a hoodie and a mask and as carrying a black pistol. The employee did not identify Clifford as being involved in the offense and admitted when recalled to the stand that he could not recognize or identify the offenders. The individual sitting in the dining area testified that he saw the man wearing a mask in the store but also saw a man outside the store aiming a gun at him through a window, that the man in the store fired a shot before both men ran, and that the two men fired three shots while they were outside. The other customer described the man in the store as wearing a skull

2

mask, a green hoodie, and light-colored jeans. Neither customer identified anyone involved in the robbery.

Besides the evidence concerning the charged offense, the State presented evidence regarding a robbery that occurred in a Midland, Texas, hotel approximately sixty-five miles away from Sterling City. The Midland robbery occurred about one hour before the Sterling City robbery. Surveillance footage from inside the hotel was admitted into evidence. On the recordings, two men are seen entering the hotel's lobby. The first man is wearing a green hoodie, a black mask with a skull on it, black gloves, light blue jeans with decorative markings above the knees, and black and yellow shoes, and the man is holding a black pistol. The second man is wearing black pants, a green long-sleeve shirt, white sandals, and a dark cloth mask, and the second man is holding a chrome handgun. Both men jump over the hotel counter, head toward a back room behind the counter, point their weapons at a hotel employee, threaten to shoot the employee, and tell the employee to open the hotel's safe. The hotel employee directs them to a drawer behind the counter where money was stored and hands the men the money. The men then direct the employee to the back room before they leave the hotel.

The hotel employee testified regarding the events captured on the recording. In addition, the hotel employee described the man wearing the skull mask as Caucasian with tattoos resembling spikes or horns around his eyes that could be seen even though he was wearing a mask. The employee admitted that he did not recognize either man.

During its case, the State presented testimony from two individuals allegedly involved in both robberies. One of the individuals was Clayton Sessom who testified that he, Robert Ritterpusch, and Clifford met at his parents' home before driving to the Midland/Odessa, Texas, area in Ritterpusch's red Hyundai and then committing the Midland and Sterling City

3

robberies on the way back to his parents' home. Sessom explained that Ritterpusch parked the car during the robberies and waited. Regarding both offenses, Sessom testified that Clifford wore the mask with a skull on it.

During Sessom's testimony, he explained that a photograph admitted into evidence showed Clifford, Ritterpusch, and him at his parents' home and showed Ritterpusch's vehicle that they used when driving on the morning in question. That photo shows three individuals holding weapons while sitting on a porch. One of those individuals identified as Clifford at trial was white, had on light colored jeans with decorative marks above the knees, and had spike tattoos on his face near his eyes.

At trial, Ritterpusch also testified regarding the morning in question and explained that he drove his car to where the robberies occurred. However, Ritterpusch also testified that he was alone, did not recall seeing Clifford that day, had been high that day, and could not identify anyone from the surveillance footage. Following Ritterpusch's testimony, the mother of Ritterpusch's ex-girlfriend testified that she helped Ritterpusch purchase his red Hyundai and described her efforts to recover the vehicle after Ritterpusch was arrested. Specifically, she related that she reached out to Clifford through his Facebook account and that the person responding from the account told her where to find the vehicle.

As part of the police investigation in this case, the police seized and analyzed cell phones belonging to Clifford and Ritterpusch, and several officers testified regarding efforts they made to analyze the contents of the phones and ascertain their locations in the hours leading up to and following the robbery at the convenience store.

After considering the evidence presented at trial, the jury convicted Clifford of the offense of aggravated robbery. Clifford appeals the trial court's judgment of conviction.

4

**DISCUSSION**

In his first issue on appeal, Clifford argues that the trial court abused its discretion by admitting evidence regarding the Midland robbery because the evidence was not relevant and could not help establish his identity as the perpetrator of the charged offense. In his second issue, Clifford argues that the trial court abused its discretion by failing to exclude the evidence regarding the Midland robbery because the probative value of that evidence was outweighed by the danger of unfair prejudice.

**Extraneous Offense Evidence**

When presenting his first issue, Clifford acknowledges that extraneous-offense evidence may be admitted in certain circumstances and that the State related that it was offering the evidence of the Midland robbery for the purpose of establishing Clifford's identity as the Sterling City offender. *See* Tex. R. Evid. 404(b). However, Clifford argues that extraneous-offense evidence may only be admitted to prove identity when identity has been made an issue in the case. *See Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004) (explaining "[f]or proof of identity to be a valid purpose" under Rule 404(b), "it must be an issue in the case"); *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996) (same). Further, Clifford highlights that he made no opening statement and had not cross-examined any of the State's witnesses on the issue of identity at the time that the State offered the extraneous-offense evidence and, therefore, argues that he did not make identity an issue. Additionally, Clifford contends that because the extraneous-offense evidence was not admissible to establish identity, the evidence constituted impermissible character-conforming evidence. *See* Tex. R. Evid. 404. Moreover, Clifford notes that the hotel employee could not identify Clifford as one of the offenders and that the

5

surveillance footage from the hotel showed that the offenders were wearing masks and other concealing clothing and, therefore, argues that the evidence is not relevant because it could not make his identity as the offender at the convenience store any more or less probable. *See id.* R. 401, 402.

Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

Under the Rules of Evidence, "[r]elevant evidence is admissible unless" provided otherwise by "the United States or Texas Constitution," "a statute," the Rules of Evidence, or "other rules prescribed under statutory authority," and evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Tex. R. Evid. 401, 402. However, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but this type of "evidence may be admissible for another purpose, such as proving motive,

6

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b). "Rule 404(b) . . . is a rule of inclusion rather than exclusion," *Chaparro v. State*, 505 S.W.3d 111, 115-16 (Tex. App.—Amarillo 2016, no pet.), and the "enumerated exceptions" listed under Rule 404(b) "are neither mutually exclusive nor collectively exhaustive," *Torres v. State*, 543 S.W.3d 404, 420 (Tex. App.—El Paso 2018, pet. ref'd). Accordingly, courts have explained that "extraneous-offense evidence, under Rule 404(b), is admissible to rebut a defensive theory raised in an opening statement or raised by the State's witnesses during cross-examination." *Bargas v. State*, 252 S.W.3d 876, 890 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *see Carter v. State*, 145 S.W.3d 702, 709 (Tex. App.—Dallas 2004, pet. ref'd) (listing cross-examination about identity of perpetrator and defensive strategy as ways in which issue of identity can be raised).

On appeal, Clifford correctly points out that he did not make an opening statement and did not cross-examine the State's witnesses on the issue of identity before the trial court made its ruling on the admissibility of the extraneous-offense evidence. However, after the jury had been selected during voir dire and sent home for the day and before the trial court made its ruling, Clifford repeatedly explained during a hearing that his main defense was "going to be the simple question of identity" and that identity was going to be "real important" during the trial. *Cf. Lagos-Valladares v. State*, No. 09-17-00493-CR, 2019 WL 2439482, at *6 (Tex. App.—Beaumont June 12, 2019, no pet.) (mem. op., not designated for publication) (concluding that record showed that identity was issue, in part, because defendant told trial court during pretrial hearing that identity was going to be "central issue"); *Lewis v. State*, No. 04-17-00335-CR, 2019 WL 1547505, at *1, *2 (Tex. App.—San Antonio Apr. 10, 2019, pet. ref'd) (mem. op., not designated for publication) (rejecting argument that identity was not issue at time of objection to

extraneous-offense evidence, in part, because defendant conceded during hearing outside presence of jury that identity was "definitely an issue"). Moreover, when the trial court made its ruling, none of the State's witnesses had been able to identify Clifford as the offender from the convenience store robbery, and the surveillance footage from the convenience store showed that the offender was wearing a mask completely covering his face and other clothing concealing his identity. *Cf. Petty v. State*, No. 01-01-00213-CR, 2001 WL 1315028, at *2 (Tex. App.—Houston [1st Dist.] Oct. 25, 2001, pet. ref'd) (op., not designated for publication) (concluding that identity was issue where witness had difficulty identifying suspect at trial).

Accordingly, we cannot conclude that the trial court abused its discretion by determining that identity was an issue in the case. *See Edwards v. State*, 228 S.W.3d 450, 451-52 (Tex. App.—Amarillo 2007, pet. ref'd) (explaining that it could not "be legitimately denied that the identity of the robbers was an issue" where robbers "wore masks and could not be identified through facial features" and concluding that trial court did not abuse its discretion in admitting extraneous-offense evidence where defendant "argued to the trial court that the evidence was very weak"); *see also Chaparro*, 505 S.W.3d at 114, 118 (disagreeing with argument that extraneous-offense evidence was not necessary to establish identity where suspects concealed their identities with masks and gloves and where defendant contested identity at trial beginning with opening statement).

However, that determination does not end the inquiry. "When the extraneous offense is introduced to prove identity by comparing common characteristics, it must be so similar to the charged offense that the offenses illustrate the defendant's 'distinctive and idiosyncratic manner of committing criminal acts.'" *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006) (quoting *Martin v. State*, 173 S.W.3d 463, 468 (Tex. Crim. App. 2005)). In

8

other words, "[w]hen identity is a material issue, there is a great need to establish the degree of similarity in the extraneous matters to prove modus operandi," which means that "the pattern and characteristics of the charged crime and the extraneous offenses are so distinctively similar that they constitute a 'signature.'" *Chaparro*, 505 S.W.3d at 116 (quoting *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008)). Common characteristics that may make a charged offense similar to an extraneous offense include the "proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Segundo*, 270 S.W.3d at 88. "No rigid rules dictate what constitutes sufficient similarities," and it is usually "the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or *modus operandi*" of an individual. *Id.*

The Midland and Sterling City robberies share significant similarities. Surveillance footage from both offenses showed a man wearing a skull mask covering his face, a green hoodie, black gloves, light colored jeans, and black shoes, and that man regularly pointed his black pistol at the victims and threatened to shoot them. Both offenses involved two perpetrators carrying handguns, and the offenses occurred approximately an hour apart at locations that were about an hour apart traveling by car.

In light of these similarities, we cannot conclude that the district court abused its discretion by determining that the common characteristics indicated that the same person wore the skull mask during both offenses. *See id.*; *see also Page*, 213 S.W.3d at 338 (explaining that "extraneous-offense evidence" does not need "to be completely identical to the charged offense to be admissible to prove identity"); *Swain v. State*, No. 01-18-00377-CR, 2019 WL 2345415, at *4 (Tex. App.—Houston [1st Dist.] June 4, 2019, pet. ref'd) (mem. op., not designated for

9

publication) (determining that offenses were "sufficiently similar" to warrant admission where robberies occurred within one hour of each other, involved individuals wearing similar clothing, had similar victims being held at gunpoint and being threatened, and had other similarities); *Hill v. State*, No. 01-16-00595-CR, 2017 WL 2290201, at *5 (Tex. App.—Houston [1st Dist.] May 25, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that extraneous offense was sufficiently similar where robberies occurred within one day of each other, where robberies were committed "in the Houston metropolitan area," where robberies "occurred at a gas station with a convenience store," where robbers "demanded money at gunpoint from the cashiers," where robbers used "black handgun," and where robbers wore dark hoodie, baseball cap, and "a black mask").

Moreover, although Clifford argues that the evidence regarding the Midland hotel robbery is not relevant to the identity of the Sterling City offender because the employee from the hotel could not identify the offender and because the individual in the skull mask wore clothing concealing his identity, the hotel employee did testify that the offender wearing the skull mask was white and had tattoos resembling spikes around his eyes that could be seen even though the man was wearing a mask. As evidenced by photos of Clifford admitted into evidence later during the trial, Clifford is white and has tattoos near his eyes that resemble spikes. Accordingly, we cannot conclude that the district court abused its discretion by concluding that the evidence pertaining to the Midland offense was relevant to establishing the identity of the man wearing the skull mask during the Sterling City offense. *See* Tex. R. Evid. 401; *see also Stone v. State*, 635 S.W.3d 763, 770 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (determining that evidence of defendant's "back tattoos was relevant to his identity because no

10

witness at the crime scene could identify appellant" and because witness outside grocery store "described a tattooed man get into the truck that belonged to [defendant]'s employer").

For these reasons, we conclude that the trial court did not abuse its discretion by overruling Clifford's relevancy objection and his objection under Rule of Evidence 404 and by admitting the extraneous-offense evidence. *See* Tex. R. Evid. 401, 404(b).

**Rule 403**

In his second issue on appeal, Clifford asserts that the trial court abused its discretion by overruling his Rule 403 objection to the admission of the extraneous-offense evidence concerning the Midland robbery. More specifically, Clifford argues that the trial court should have sustained his objection because the extraneous-offense evidence did not and could not establish a connection to Clifford.

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation

11

omitted).  Moreover, appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion, *see Tillman*, 354 S.W.3d at 435, and should afford trial courts a high level of deference regarding admissibility determinations under Rule 403, *see Robisheaux v. State*, 483 S.W.3d 205, 218 (Tex. App.—Austin 2016, pet. ref'd); *see also Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g) (explaining in Rule 403 context that in close cases trial court should favor admission of evidence).

Although this is not an exhaustive list, courts generally balance the following factors when performing a Rule 403 analysis: "(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019); *see Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).  In this context, "probative value" refers to how strongly evidence makes the existence of a "fact of consequence" "more or less probable" and to how much the proponent needs the evidence and that "unfair prejudice" refers to how likely it is that the evidence might result in a decision made on an "improper basis," including "an emotional one."  *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)).

Regarding the probative value, there were significant similarities between the Midland and Sterling City offenses.  For example, the surveillance footage from both incidents shows an individual who appears to be wearing identical clothing in both offenses and who threatens to kill the victims while holding a dark colored pistol.  Moreover, those offenses occurred approximately one hour apart.  *See Johnson v. State*, 68 S.W.3d 644, 651 (Tex. Crim. App. 2002) (noting that "time interval" between offenses "was very short" where offenses "were

12

committed within a few hours of each other"). In addition, the surveillance footage from the Midland incident is clearer and shows more details regarding the offender's clothing than the footage from the Sterling City incident, and the Midland hotel employee testified that he was able to see that the offender in the skull mask was white and had spike tattoos around his eyes. As discussed above, pictures of Clifford admitted into evidence show that Clifford is white and has tattoos on his face near his eyes resembling those described by the employee, and the jury was able to see Clifford during the trial. Accordingly, the trial court could have determined that the probative value of the extraneous offense weighed in favor of admission.

Turning to the potential for the evidence to impress the jury in some irrational way, we note that the trial court included in the charge an instruction that the jury may consider evidence regarding extraneous offenses only if they first determined beyond a reasonable doubt that Clifford committed the extraneous offense and then only for the limited purpose of establishing his identity. *See Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting that "the impermissible inference can be minimized through a limiting instruction"); *see also Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (stating that appellate courts "presume that the jury obeyed" limiting instructions). Moreover, the surveillance footage and testimony detailing the charged offense showed a more serious offense than the extraneous offense because the offender in the convenience store threatened to shoot and pointed his handgun at multiple people before discharging the weapon inside the store in close proximity to people nearby. As a result, the evidence regarding the charged offense "likely overshadowed any inflammatory response the jury may have had to [evidence] about the extraneous act[]." *See Burke v. State*, 371 S.W.3d 252, 258 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd, untimely filed). Therefore, the trial court could have

13

reasonably determined that the evidence would not impress the jury in an irrational manner and that this factor weighed in favor of admission.

Regarding the time needed to develop this evidence, we note that the guilt-innocence phase of the trial took three days and that the record for that phase spans almost 700 pages. Moreover, the hotel employee's testimony was only fourteen pages of the record, and the surveillance footage from the Midland offense is less than three minutes in length. However, other witnesses mentioned the Midland offense in their testimonies, including the officers who discussed cell phone records around the time of the incidents and Sessom who testified that Clifford was the offender in the skull mask for both robberies. Accordingly, the trial court could have determined that the time factor weighed neither in favor of nor against admission of the evidence. *See Robisheaux*, 483 S.W.3d at 221 (finding this factor weighed in favor of admission where evidence regarding extraneous offense came in though one witness, where guilt-innocence phase lasted three days, and where testimony about extraneous offense "was only eight pages long"); *see also Mcree v. State*, No. 03-17-00021-CR, 2018 WL 1547278, at \*12 (Tex. App.—Austin Mar. 30, 2018, pet. ref'd) (mem. op., not designated for publication) (determining that trial court could have found that time factor either weighed in favor of admission or was neutral regarding admission of extraneous-offense evidence where testimony about extraneous offense took up 93 pages out of 500-page record).

Finally, turning to the State's need for the evidence, we note that in deciding whether the evidence was needed, courts should consider whether the proponent had other evidence to establish the fact of consequence, how strong the other evidence was, and whether the "fact of consequence related to an issue that is in dispute." *See Erazo v. State*, 144 S.W.3d 487, 495-96 (Tex. Crim. App. 2004) (quoting *Montgomery*, 810 S.W.2d at 390). As discussed above,

14

the extraneous-offense evidence helped establish the identity of the offender for the Sterling City robbery. Before the admission of the evidence, none of the State's witnesses to the Sterling City offense were able to identify the offender. Therefore, the trial court could have reasonably concluded that the State's need for the evidence weighed in favor of admission of the evidence.

Given our standard of review, the presumption in favor of admissibility, and the resolution of the factors discussed above, we cannot conclude that the trial court abused its discretion by overruling Clifford's Rule 403 objection. *Cf. Work v. State*, No. 03-18-00244-CR, 2018 WL 2347013, at *12 (Tex. App.—Austin May 24, 2018) (mem. op., not designated for publication) (upholding trial court's ruling denying Rule 403 objection when majority of factors weighed in favor of admission of evidence), *aff'd*, No. PD-1247-18, 2020 WL 6483888 (Tex. Crim. App. Nov. 4, 2020) (op., not designated for publication).

**Harm**

Even if the trial court abused its discretion by concluding that identity was an issue at the time of the admission of the evidence or by concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, we would still be unable to sustain Clifford's issues on appeal.

The erroneous admission of evidence is not constitutional error. *See Casey*, 215 S.W.3d at 885. Accordingly, the error must be disregarded unless it affected substantial rights. Tex. R. App. P. 44.2(b). A defendant's substantial rights are affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In determining whether a defendant's substantial rights were affected, the reviewing "court should consider everything in the record,

15

including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *see Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). "The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable," and the court may also consider "whether the State emphasized the error." *Motilla*, 78 S.W.3d at 355-56. If the reviewing court, "after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect," then the defendant's substantial rights were not affected. *Id.* at 355 (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

The evidence in this case supports the jury's verdict. *Cf. id.* at 358 (noting that "evidence of the defendant's guilt is a factor to be considered" in harm analysis under Rule 44.2(b)). For example, Sessom testified that he, Clifford, and Ritterpusch went to his parents' house and took photos of themselves holding weapons and showing the car that was later used during the robberies. Further, Sessom related that the three of them robbed the convenience store in Sterling City; that Clifford was wearing blue jeans, a green jacket, and a black and white skull mask; that Clifford was holding a pistol during the offense; and that Clifford fired his weapon in the store.

Moreover, Sessom's testimony was corroborated by other evidence at trial. *See* Tex. Code Crim. Proc. art. 38.14 (requiring testimony of accomplice to be corroborated before it can result in conviction). The police recovered from Clifford's phone a picture of Clifford and two other individuals holding guns that was taken a few hours before the robbery. The police

16

recovered another picture from Clifford's phone showing him wearing black and yellow shoes and jeans with a decorative design above the knees and holding a black handgun, and the items of clothing and the gun appear similar to the clothing worn and gun used by the offender in the convenience store. In addition, the police found a text exchange in which Clifford was sent the address to Sessom's parents' home and in which Clifford indicated that he would travel to the home.

Further, the records for Clifford's and Ritterpusch's cell phones showed that the phones connected to towers near where Sessom's parents lived on the night before the early morning offense. The records also revealed that Clifford's phone was used to call his girlfriend in jail the night before the offense while connected to a tower near Sessom's parents' home. On a recording of that conversation, the man stated that he was going to head out of town "for a few hours" "to get this money" and to "mak[e] money" and referenced how the woman "kn[e]w what we do." Clifford's phone records indicated that his phone remained stationary in the area and did not have any active use until approximately 6:40 a.m. after the offense at Sterling City. Although the records demonstrated that there was an unexplained entry at 4:23 a.m. on the morning of the offense and although an investigating officer explained that the entry may have been from someone using the phone, the officer also testified that the data usage might have been from apps on the cell phone being used in the background.

The records for Ritterpusch's phone also showed that the phone traveled from the area where Sessom's parents lived to Odessa before heading back and stopping in Sterling City for approximately twenty minutes at the time of the offense at the convenience store. Additionally, the cell phone records for Clifford's phone documented that the phone was used to call his girlfriend approximately one and a half hours after the Sterling City offense. On a

recording of that conversation, the man explained that he stayed up all night, "had an interesting night," and had been a "savage," and the woman warned him to "chill out" now so that nothing "happen[s] to" him. The records also revealed that hours after the offense Clifford's phone was used to search the internet for news about robberies in the area.

Moreover, after Ritterpusch was arrested for the offense, the mother of his ex-girlfriend tried to recover the red Hyundai that Sessom described as being used to drive on the morning in question. The mother testified that an individual responding from Clifford's Facebook account told her the vehicle's location.

In addition, although Clifford did not cross-examine the State's witnesses on the issue of identity before the extraneous-offense evidence was admitted, he did bring up the issue of identity during his subsequent cross-examination of the State's witnesses by asking one of the State's witnesses if he was able to identify Clifford as the offender by his voice, asking the mother of Ritterpusch's ex-girlfriend if she ever saw the person whom she interacted with on Facebook and if she could identify the person's voice, asking Sessom questions undermining the credibility of his testimony identifying Clifford as the offender, and asking one of the investigating officers whether Clifford's cell phone records were more consistent with him being in the area near Sessom's parents' home rather than in Sterling City during the time of the offense. Further, the jury charge included a limiting instruction informing the jury that they could consider the extraneous-offense evidence only if the jury determined beyond a reasonable doubt that Clifford committed the extraneous offense and only for the limited purpose of determining identity. *See Beam*, 447 S.W.3d at 405.

Finally, during his closing argument, Clifford focused his argument on the issue of identity and how the customers and the employee from the convenience store could not

18

identify the offender, and Clifford attacked the credibility of Sessom's testimony. Clifford also reminded the jury that they could only consider the extraneous-offense evidence for the limited purpose described in the jury charge. In its closing argument, the State mentioned the Midland incident when providing a timeline of the night of the charged offense and mentioned the testimony of the hotel employee describing the offender as having spike tattoos around his eyes, but the State focused its short closing argument on the phone calls that were made to Clifford's girlfriend before and after the offense, the cell phone records establishing no active use on Clifford's phone during the hours leading up to the offense, the phone searches that were performed on Clifford's phone after the offense, and the clothes Clifford was wearing in the photos admitted into evidence.

In light of the preceding, we must conclude that any error stemming from the trial court's decision to admit the evidence concerning the Midland robbery did not have "a substantial and injurious effect or influence in determining the jury's verdict" and therefore did not affect Clifford's substantial rights. *See King*, 953 S.W.2d at 271. Accordingly, we hold that any error would be harmless. *See* Tex. R. App. P. 44.2(b).

For all the reasons stated above, we overrule Clifford's two issues on appeal.

## CONCLUSION

Having overruled Clifford's two issues on appeal, we affirm the trial court's judgment of conviction.

19

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   May 12, 2022

Publish

20